Robert T. Szyba
Max A. Scharf
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

*Attorneys for Defendants Infomatics, LLC,*
*The People Searchers, LLC, and We Inform, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br> WE INFORM, LLC, et al., <br> Defendants. | Civil Action No.: 1:24-cv-04037-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br> INFOMATICS, LLC, et al. <br> Defendants. | Civil Action No.: 2:24-cv-04041-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br> THE PEOPLE SEARCHERS, LLC, et al., <br> Defendants. | Civil Action No.: 2:24-cv-04045-HB |

## WE INFORM, INFOMATICS, AND PEOPLE SEARCHERS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PERSONAL JURISDICTION DISCOVERY

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND....................................................................................2

PROCEDURAL BACKGROUND............................................................................5

LEGAL ARGUMENT ............................................................................................7

    I.     Plaintiffs Served Multiple Interrogatories Which Are Not Proportional to Their Jurisdictional Discovery Needs. ........................8

    II.    Plaintiffs Served Multiple Interrogatories Which Are Completely Irrelevant to Jurisdictional Discovery ...........................13

    III.    Plaintiffs Served Multiple Document Requests Which Are Not Proportional to Their Jurisdictional Discovery Needs. ......................21

    IV.    Plaintiffs Served Multiple Document Requests Which Are Irrelevant to Jurisdictional Discovery .................................................28

CONCLUSION ....................................................................................................34

318965974v.6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3G Licensing, S.A. v. Lenovo Grp. Ltd.*,
   No. 17-cv-84, 2019 U.S. Dist. LEXIS 143453 (D. Del. Aug 22,
   2019) ...................................................................................................................15

*Booker v. Twp. of Cinnaminson*,
   No. 12-cv-2786¸ 2012 U.S. Dist. LEXIS 147609 (E.D. Pa. Oct. 5,
   2012) ...................................................................................................................16

*Briskin v. Shopify, Inc.*,
   135 F.4th 739 (9th Cir. 2025) ......................................................................15, 16

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC*,
   935 F. Supp. 2d 615 (S.D.N.Y. 2013) ...............................................................30

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)............................................................................................23

*Claude P. Bamberger Int'l v. Rohm & Haas Co*.,
   No. 96-cv-1041, 1998 U.S. Dist. LEXIS 11141 (D.N.J. Apr. 1,
   1998) ...................................................................................................................12

*Cmty. Ass'n Underwriters of Am. v. Queensboro Flooring Corp*.,
   No. 10-cv-1559, 2014 U.S. Dist. LEXIS 51525 (M.D. Pa. Apr. 15,
   2014) ...................................................................................................................26

*Cooper v. Universal Stainless & Alloy Prods.*,
   No. 24-cv-798, 2025 U.S. Dist. LEXIS 99603 (W.D. Pa. May 27,
   2025) ...................................................................................................................23

*Deardorff v. Cellular Sales of Knoxville, Inc.*,
   No. 19-cv-2642, 2020 U.S. Dist. LEXIS 153884 (E.D. Pa. Aug. 25,
   2020) ...................................................................................................................11

*Flood v. Schaefer*,
   No. 06-cv-82, 2012 U.S. Dist. LEXIS 21243 (W.D. Pa. Feb. 17,
   2012) ...................................................................................................................10

iii

*Hankins v. Doubletree Mgmt., LLC*,
No. 19-cv-8698, 2022 WL 3013089 (D.N.J. July 29, 2022) ..............................20

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024) .................................................15, 16, 31

*Helicopteros Nacionales De Colombia v. Hall*,
466 U.S. 408 (1984)..............................................................................31

*Hurley v. Cancun Playa Oasis Int'l*,
No. 99-cv-574, 1999 WL 718556 (E.D. Pa. Aug. 31, 1999)............................20

*IMO Indus. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998) .................................................................14

*Lasala v. Marfin Popular Bank Pub. Co.*,
410 F. App'x 474 (3d Cir. 2011) .........................................................19

*Newman v. N.C. Ins. Underwriting Ass'n*,
No. 20-cv-1464, 2020 U.S. Dist. LEXIS 212387 (D.N.J. Nov. 9,
2020) ....................................................................................................16

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007) ..........................................................1, 29

*Robinson v. Horizon Blue Cross-Blue Shield*,
No. 12-cv-2981¸ 2013 U.S. Dist. LEXIS 180325 (D.N.J. Dec. 23,
2013) ....................................................................................................32

*Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*,
750 F.3d 1178 (10th Cir. 2014) .........................................................15

*Shuker v. Smith & Nephew, PLC*,
885 F.3d 760 (3d Cir. 2018) .................................................7, 25, 33

*Smith v. Lyons, Doughty & Veldhuis, P.C.*,
No. 07-cv-5139¸ 2008 U.S. Dist. LEXIS 56725 (D.N.J. July 23,
2008) ....................................................................................................32

*Spina v. Refrigeration, Serv. & Eng'g*,
No. 14-cv-4230, 2014 U.S. Dist. LEXIS 142358 (E.D. Pa. Oct. 7,
2014) ....................................................................................................33

iv

*UMAC, Inc. v. Aqua-Gas AVK*,
   No. 04-cv-4022, 2005 U.S. Dist. LEXIS 6124 (E.D. Pa. Mar. 30,
   2005) ............................................................................................................... 17

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................ 14, 15, 29

**Statutes**

Daniel's Law, N.J.S.A. 47:1A-1, *et seq.* ............................................................ *passim*

**Other Authorities**

Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2008.3 (3d ed. 2024) ................. 16, 28

Black's Law Dictionary, *Intentional Tort* (12th ed. 2024) ..................................... 14

Fed. R. Civ. P. 1 ............................................................................................ 9, 18, 26

Fed. R. Civ. P. 26(b)(1) ......................................................................................... 7, 18

L. Civ. R. 37.1 ......................................................................................................... 6, 22

318965974v.6

Defendants We Inform, LLC ("We Inform"), Infomatics, LLC ("Infomatics"), and The People Searchers, LLC ("People Searchers") respectfully submit this brief in opposition to Plaintiffs' motion to compel personal jurisdiction discovery (the "Motion").[1]

## INTRODUCTION

By order dated April 2, 2025, the Court authorized Plaintiffs to serve discovery requests on the limited issue of personal jurisdiction. But Plaintiffs' discovery requests have been anything but limited. Plaintiffs' requests and their motion to compel repeatedly conflate merits and jurisdictional discovery. Their motion is a jumbled, unfocused request for a fishing expedition into more than twenty (20) separate requests which bear little, if any, relation to the only relevant issue for purposes of jurisdiction—*i.e.*, whether Plaintiffs' claims "arise out of or relate to" Defendants' contacts with the forum state. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). The requests, on their face, seek merits discovery on Daniel's Law and other data privacy laws. *See, e.g.*, RFP No. 13 ("any [communications] . . . regarding the introduction and passage of Daniel's

---

[1] Citations to "Szyba Ex. __" refer to the exhibits appended to the accompanying Declaration of Robert T. Szyba, Esq. Citations to "ECF No. __" refer to the docket entries in *Atlas Data Privacy Corp., et al. v. We Inform, LLC*, No. 24-cv-4037.

1

Law"); RFP 21 (documents regarding "Defendant's modification of any product or service to address . . . Daniel's Law, NJITPA, and NJFRCA").

Ultimately, by this case, Plaintiffs are trying to drag two Florida companies (We Inform and The People Searchers) and one California company (Infomatics) into a state, New Jersey, with which they have no contacts whatsoever. By this Motion, Plaintiffs are now trying to go fishing for an actual basis to do so. But that is completely backwards. It is Plaintiffs' burden to prove their discovery requests are likely to demonstrate that personal jurisdiction is appropriate. They have not come close to meeting that burden.

For the foregoing reasons, and those set forth below, Plaintiffs' Motion should be denied.

## FACTUAL BACKGROUND

The inescapable conclusion from the ample information *already disclosed* by Defendants is that personal jurisdiction is not appropriate in New Jersey. Nevertheless, Plaintiffs want to keep fishing.

There are numerous examples within Defendants' interrogatory responses which confirm that jurisdiction is inappropriate here. In response to ROG 3, Defendants confirmed that "none of [their] officers, directors, employees, contractors, vendors, or employees have been residents of New Jersey." In response to ROG 4, they stated that "Defendant[s] do[] not engage in any advertising or

2

marketing which is specifically designed for New Jersey residents." They "[have] not entered into any contracts or agreements with any New Jersey entity related to the provision of [their] products or services." (*See* ROG 5.) Defendants obtain their data from "a Georgia company, which has a principal place of business [in] . . . Boca Raton, FL." (ROG 6.) They have not within the last 5 years, "entered into any contract executed within the State of New Jersey or to be performed in . . . New Jersey" (ROG 11); "commenced any legal actions within the State of New Jersey" (ROG 13); been "authorized to do business in the State of New Jersey" (ROG 14); or "claim[ed] a tax credit or tax deduction for taxes paid" in New Jersey (ROG 15).

There are also several examples within Defendants' responses to Plaintiffs' document responses which show that personal jurisdiction cannot lie in New Jersey. For example, in response to RFP 8, Defendants explained that they have not "entered into any contracts or agreements with any New Jersey entity related to the provision of [their] products or services." Further, in response to RFP 19, Defendants stated that We Inform derived $6,249.06 from New Jersey in 2023 (which was merely 1.89% of its total revenue); People Searchers derived $24,758 from New Jersey in 2023 (merely 1.42% of its total revenue); and Infomatics derived $60,198 from New Jersey in 2023 (merely 1.47% of its total revenue).

And, importantly, Daniel's Law is not limited to only New Jersey addresses, only New Jersey public servants, or only New Jersey residents. Thus, not all "covered persons" in this litigation are current/former New Jersey public servants, not all are New Jersey residents, and not all addresses and/or phone numbers are from New Jersey.

Furthermore, Defendants' motion to dismiss for lack of personal jurisdiction provided extensive details regarding Defendants' lack of contacts with the forum.[2] As Defendants explained in their motion, none of the Defendants are organized in New Jersey. We Inform and People Searchers are organized in Florida, and Infomatics is organized in California. None of them are registered to do business in New Jersey. We Inform and People Searchers are registered in Florida and Oregon. Infomatics is registered in Oregon and California. None of them are headquartered in New Jersey. None of the them have an office in New Jersey. None of them have any real property in New Jersey. None of them have any employees who work or reside in New Jersey. None of them offer products specifically designed for New Jersey residents.

---

[2]    Defendants' motion to dismiss is provided at ECF No. 45. The above statements on this page 4 are supported by the previously-filed declarations of: (i) Mark Chin, COO of People Searchers, and Managing Member of We Inform, and (ii) Kwan Woo Park, Managing Member of Infomatics. Such declarations are appended to the accompanying Szyba Declaration as Exhibits 1 – 3.

4

We Inform offers the reports of 42,065,494 individuals, only 305,193 (approximately 0.7%) of which reside in New Jersey. People Searchers offers the reports of 60,222,137 individuals, only 789,361 (approximately 1.3%) of which reside in New Jersey. Infomatics offers the reports of 126,178,680 individuals, only 1,442,660 (approximately 1.1%) of which reside in New Jersey. Notably, Defendants have no way of knowing which, if any, of those individuals might qualify as "covered persons" under Daniel's Law.

Ultimately, after disclosing all of the above, ample information, it is neither necessary nor proportional for Defendants to provide further discovery on personal jurisdiction. Defendants have produced more than enough information to make it clear that there is no basis for personal jurisdiction in New Jersey.

## PROCEDURAL BACKGROUND

Prior to filing the present Motion, Plaintiffs sent one discovery letter to Defendants, which they served on June 4, 2025. (*See* ECF No. 72-3.) Plaintiffs' discovery letter attempted to address all at once the discovery responses of several defendants in thirteen (13) different actions.[3] Plaintiffs' Discovery Letter

---

[3]  *See Atlas Data Privacy Corp., et al. v. Belles Camp Communications, Inc.*, No. 1:24-cv-04949; *Atlas Data Privacy Corp., et al. v. Delvepoint, LLC*, No. 1:24-cv-04096; *Atlas Data Privacy Corp., et al. v. Equimine, Inc. d/b/a Propstream*, No. 1:24-cv-04261; *Atlas Data Privacy Corp., et al. v. Go Hunt, LLC*, No. 1:24-cv-04380; *Atlas Data Privacy Corp., et al. v. Infomatics LLC*, No. 1:24-cv-04041; *Atlas Data Privacy Corp., et al. v. Lighthouse List Company LLC*, No. 1:24-cv-1143; *Atlas Data Privacy Corp., et al. v. Melissa Data Corp.*, No. 1:24-cv-04292;

was not specifically addressed to Infomatics, We Inform, or People Searchers.  (*Id.*)

Nor did Plaintiffs' letter discuss the significant amount of information (as discussed

above) which was *already disclosed* by Infomatics, We Inform, or People Searchers,

or how this information was purportedly insufficient to satisfy the limited purpose

of jurisdictional discovery.  (*See id.*).

On June 9, 2025, Defendants' counsel, along with counsel for several other

defendants in separate lawsuits, attended the "group meet and confer."  (*See* Szyba

Decl. ¶ 7); (Mot. at 2.)  Defendants' counsel also met with Plaintiffs' counsel to

confer separately regarding the discovery responses of We Inform, Infomatics, and

People Searchers.  (*See* Szyba Decl. ¶ 8.)  Despite Defendants' attempts at conferral

and without waiting for any further response from Defendants, Plaintiffs filed the

instant motion.  Such practice wholly ignores Local Civil Rule 37.1 (requiring a

"good faith effort" to resolve any discovery issues; *not* simply a ceremonial letter

and phone call).

Plaintiffs filed the present Motion on June 30, 2025.  (ECF No. 72.)

Oddly, Plaintiffs now move to compel on several discovery requests which were not

---

*Atlas Data Privacy Corp., et al. v. Nuwber, Inc*., No. 1:24-cv-04609; *Atlas Data Privacy Corp., et al. v. People Whiz*, No. 1:25-cv-00237; *Atlas Data Privacy Corp., et al. v. Quantarium Alliance LLC*, No. 1:24-cv-04098; *Atlas Data Privacy Corp., et al. v. Spy Dialer, Inc.*, No. 1:24-cv-11023; *Atlas Data Privacy Corp., et al. v. The People Searchers, LLC*, No. 1:24-cv-04045; *Atlas Data Privacy Corp., et al. v. We Inform, LLC*, No. 1:24-cv-04037.

even mentioned in their June 4 letter or during either conferral.  For example, Plaintiffs move to compel We Inform to provide responses to Plaintiffs' Document Request Nos. 2, 6, 18, 20, and 23.  This is the first time Defendants are hearing about these purported deficiencies, as Plaintiffs never raised any concerns before filing their Motion.  Plaintiffs' Motion, full of conclusory and vague assertions, is a rambling attempt to compel discovery from Defendants on more than twenty (20) requests which are not even close to focused upon the limited issue of personal jurisdiction (the only appropriate issue at this stage).

## LEGAL ARGUMENT

"[J]urisdictional discovery is not a license for the parties to engage in a fishing expedition." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018) (internal quotations omitted).  As the Third Circuit has explained, this is "all the more true after the 2015 amendments to the Federal Rules of Civil Procedure," which require discovery to be proportional to the needs of the case.  *Id.* District courts "should take care to circumscribe the scope of discovery . . . to only the factual questions necessary to determine its jurisdiction," taking into account the proportionality factors under Federal Rule of Civil Procedure 26(b)(1).  *Id.*

Defendants have already disclosed more than enough information to make it clear that personal jurisdiction is improper.  There is no legitimate basis for Plaintiffs to continue harassing these out-of-state Defendants with scorched-Earth merits-

318965974v.6

discovery-disguised-as-personal-jurisdiction discovery when it is already clear—and Plaintiffs continue to offer not even one iota of a *factual* basis otherwise (resorting to at best, an argument, effectively, that such discovery is warranted simply because Defendants have a website that exists on the internet)—that there is no basis for personal jurisdiction over We Inform, People Searchers, or Infomatics.

## I.    **Plaintiffs Served Multiple Interrogatories Which Are Not Proportional to Their Jurisdictional Discovery Needs.**

In Plaintiffs' Motion, they seek to compel responses to Interrogatories which: (i) are not proportional to Plaintiffs' legitimate discovery needs; and (ii) have already been adequately addressed in Defendants' disclosures.[4]

***Interrogatory No. 3***.  In ROG 3, Plaintiffs demand that Defendants identify every single one of Defendants' "officers, directors, employees, contractors, vendors, and any other individuals" involved in "offering of any product, service, or digital platform that has . . . made available information subject to Daniel's Law." This Request purports to require Defendants to disclose *every single one of their employees* and, arguably, *every single person with whom Defendants have dealt in any way* because, as Defendants already explained to Plaintiffs, they market and

---

[4]    Plaintiffs' discovery requests are set forth in full within Defendants' responses to Plaintiffs' requests.  Defendants submitted their interrogatory responses by email to Chambers on May 14, 2025, and submitted to Chambers their responses to Plaintiffs' document requests contemporaneously with filing the present brief. At the Court's request, Defendants can submit such responses by hard copy to Chambers, and/or file a motion to seal the discovery responses on the docket.

offer the same products on a nationwide basis (none of their products or marketing is New Jersey-specific).  Such a request is, manifestly, not proportional to Plaintiffs' needs.  Further, Defendants already disclosed the following individuals as having relevant information: (i) Mark Chin, COO of People Searchers, and Managing Member of We Inform, and (ii) Kwan Woo Park, Managing Member of Infomatics. (*See* Szyba Exs. 1 – 3.)  Plaintiffs fail to provide any basis to find that additional disclosure is necessary or proportional.

Notably, the practical reality of this request reveals Plaintiffs' true intentions. Plaintiffs are seeking an end run around the rules of this Court to conduct merits discovery under the guise of jurisdictional discovery.  It is plainly obvious that the identities of these individuals (*i.e.*, their names), in and of themselves, have no bearing on any of the issues relevant to the question of whether there is personal jurisdiction over any of the Defendants.  This interrogatory is a thinly-veiled attempt to expand this fishing expedition to non-parties and to additional discovery devices—including depositions, etc.—which will almost certainly (if the instant interrogatories and document requests are any indication) seek to pillage as many opportunities as possible for merits discovery.  Indeed, Plaintiffs have already made clear their intention to pursue depositions as the next phase of this discovery (notably, without providing explanation as to how Fed. R. Civ. P. 1 is served by the wild expansion of discovery despite this being a discrete issue).  (*See, e.g.*, Mot. at 15)

9

(Plaintiffs arguing "all officers, directors, employees, contractors, [and] vendors" are "potential deponents").[5]

***Interrogatory No. 4***.  In ROG 4, Plaintiffs request that Defendants identify "advertising or marketing activities conducted by Defendant or anyone acting on Defendant's behalf in New Jersey."

Each Defendant already responded to this Interrogatory, explaining that:

> Defendant advertises [its] products nationwide through social media and search marketing (a form of marketing intended to increase the likelihood that Defendant's websites will appear in the results of search engines). However, Defendant does not engage in any advertising or marketing which is specifically designed for New Jersey residents.

Plaintiffs claim they must "determine whether [the marketing] activities bear a 'particular nexus' with New Jersey." (Mot. at 15.)  But Defendants' above response fully addressed this issue—and, based on Defendants response, there is <u>no</u> "particular nexus" to New Jersey.  *See Flood v. Schaefer*, No. 06-cv-82, 2012 U.S. Dist. LEXIS 21243, at *12 (W.D. Pa. Feb. 17, 2012) (denying motion to compel discovery, and stating "[plaintiff] has already received the discovery to which he is entitled").

---

[5]  Plaintiffs also make an overlapping request in ROG 8 that Defendants should "[i]dentify all officers, directors, employees, contractors, vendors, and other individuals" who have "reviewed . . . any Daniel's Law requests."  ROG 8 is improper for the same reasons discussed above as to ROG 3.  For example, there is no basis to conclude that identification of such individuals is relevant to the issue of personal jurisdiction.

In effect, despite Defendants' response confirming that there is no "advertising or marketing" that is specific in New Jersey, and despite Plaintiffs being unable to point to *any* fact that shows otherwise, Plaintiffs seek for Defendants to produce *all* of their advertising and marketing worldwide (a not insignificant exercise) so that Plaintiffs can rummage through all of that information only to end up finding what has already been provided, that Defendants have no advertising or marketing directed at New Jersey.  *See, e.g.*, *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. 19-cv-2642, 2020 U.S. Dist. LEXIS 153884, at *27 (E.D. Pa. Aug. 25, 2020) (denying request for "all advertising, marketing or business communication sent to the forum state" as it sought communications "regardless of the relevance of any such contacts to this suit").

**_Interrogatory No. 5_**.  In ROG 5, Plaintiffs ask Defendants to "identify any entity with whom [they] had any contracts, agreements, or arrangements in connection with or for the provision of any product, service, or digital platform that has . . . made available information subject to Daniel's Law."  Because Defendants' offer the same products nationwide, this is a request to identify *every entity* with whom Defendants had *any* "contracts, agreements, or arrangements."

Defendants already responded that they have not "entered into any contracts or agreements with any New Jersey entity related to the provision of [their] products

or services." This response is sufficient to address the limited issue of jurisdiction in New Jersey.

Plaintiff claim they need to go fishing into every single one of Defendants' contracts based on the half-baked hypothetical that "[i]f a Defendant had a relationship with a non-New Jersey entity that directly entered New Jersey on Defendant's behalf to obtain data for use in the Defendant's products, that relationship might independently establish jurisdiction on an agency or alter-ego theory." (Mot. at 16.) Again, Plaintiffs' explanation plainly reveals their intention to utilize personal jurisdiction discovery to conduct extensive third-party discovery and merits discovery, which, if allowed, will result in *this* stage of proceedings being exploited for merits discovery in this litigation. Suffice to say, Plaintiffs' conjecture should be rejected. Further, in any event, Plaintiffs' boogeyman does not exist—there is no "non-New Jersey entity that directly entered New Jersey on [Defendants'] behalf to obtain data for use in the [their] products." *See id.*; *see also, e.g.*, *Claude P. Bamberger Int'l v. Rohm & Haas Co.*, No. 96-cv-1041, 1998 U.S. Dist. LEXIS 11141, at *4 (D.N.J. Apr. 1, 1998) (denying motion to compel where movant "not only sought to engage in a fishing expedition," but also "drain the pond and collect the fish from the bottom . . . without knowing whether there were even any fish in the pond").

12

## II. Plaintiffs Served Multiple Interrogatories Which Are Completely Irrelevant to Jurisdictional Discovery

Furthermore, Plaintiffs seek to compel responses to three Interrogatories—ROG Nos. 7, 9, and 10—which have nothing to do with jurisdictional discovery.

***Interrogatory No. 7***.  In ROG 7, Plaintiffs demand that Defendants "[i]dentify any audit, review, or evaluation . . . for compliance with New Jersey law for any of Defendant's services, products, or digital platforms that . . . makes available information subject to Daniel's Law."  Plaintiffs claim that "compliance efforts" are relevant because such efforts: (i) "indicate" Defendants worked "systematically" in New Jersey; and (ii) "show knowledge under the effects test."

As an initial matter, Defendants' discovery responses already confirm they do not have any "systematic" contacts with New Jersey (*e.g.*, no headquarters in New Jersey, no offices in New Jersey, no employees in New Jersey, approximately 99% of their revenue is from outside New Jersey).

Further, Plaintiffs' reliance on the "effects test" is misguided. Plaintiffs already relied on the "effects test" in requesting jurisdictional discovery in state court, and their request was soundly rejected. *See Atlas Data Privacy Corp. v. LexisNexis Risk*, BER-L-000875-24 (Law Div. June 6, 2025) ("Plaintiffs have not presented factual allegations suggesting with reasonable particularity the possibility of contacts between Defendants and New Jersey as to warrant jurisdictional

13

discovery"). The state court's rejection of the "effects test" was warranted because, clearly, Plaintiffs cannot satisfy any part of the test.

The effects test requires the plaintiff to show the following: "1) The defendant committed an intentional tort; 2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and 3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

Daniel's Law is not a "tort," much less an "intentional tort." *See* Black's Law Dictionary, *Intentional Tort* (12th ed. 2024) (an intentional tort is "[a] tort committed by someone acting with general or specific intent. Examples include battery, false imprisonment"). There is no specific intent standard of liability— the Honorable Harvey Bartle, III reached this exact conclusion in his ruling dated November 26, 2024, explaining "the court concludes that Daniel's Law does not mandate a specific intent standard of liability." (ECF No. 31 at p. 39.) The Complaint also does not identify any "intentional" wrongdoing, nor does it mention the "effects test" at all. And, of course, the Complaint does not allege that Defendants "expressly aimed" their conduct at New Jersey. In the absence of such allegations, Plaintiffs' reliance on the "effects test" is pointless and should be rejected. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (under the "effects

14

test," explaining that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but *whether the defendant's conduct connects him to the forum* in a meaningful way") (emphasis added); *Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state."). Furthermore, to the extent that this Court rejected the notion that Daniel's Law should be interpreted to limit extraterritorial application, then presumably Daniel's Law can apply to any person in the world by way of association and co-habitation with any current or retired covered person. (ECF No. 70.) So, if the coverage of Daniel's Law is not limited to New Jersey, then any "effects" relevant to anyone (who can be anywhere in the world) covered by Daniel's Law is not specific to New Jersey at all, making the "effects test" inapplicable in this litigation, absent evidence that a Defendant designed an effect specifically targeted at covered persons residing in New Jersey, which, of course, there is *zero* evidence of.

Plaintiffs' repeated references to the out-of-circuit decision in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), add no weight to their position on the "effects test." *Briskin* is neither controlling nor in-line with Third Circuit law as recently articulated in *Hasson*. Indeed, the plaintiff in *Thomas v. Papa Johns, Int'l*, Case No. 24-3557 (June 18, 2025), successfully argued before the Ninth Circuit that

"*Briskin* repudiates" the ruling in *Hasson*.  (See Szyba Ex. 4 at p. 7.)  In *Thomas*, the plaintiff argued that the Third Circuit's rule on the "effects test"—which requires the defendant to treat the forum state differently, not the same as other states— was an "erroneous application" of law.  Instead, the plaintiff argued "the *Hasson* court's 'forum-specific focus' rule is the exact same one rejected by *Briskin*[.]"  (*Id*.)

Plaintiffs have no legal basis for their interrogatories (based on the inapposite *Briskin* case or otherwise), and Plaintiffs offer no concrete factual basis for the discovery being sought.  Instead, they are using jurisdictional discovery to figure out whether they have a viable claim against Defendants in the first place.  *See 3G Licensing, S.A. v. Lenovo Grp. Ltd.*, No. 17-cv-84, 2019 U.S. Dist. LEXIS 143453, at *23-24 (D. Del. Aug 22, 2019) ("[C]an a plaintiff be entitled to jurisdictional discovery if it has not made out a prima facie showing of personal jurisdiction? . . . [P]ursuant to Third Circuit case law, the answer is 'no.'"); Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2008.3 (3d ed. 2024) ("a district court may properly refuse or limit jurisdictional discovery if the plaintiff has not made a sufficient showing that there may be a basis for exercise of jurisdiction").

***Interrogatory No. 9***.  In ROG 9, Plaintiffs seek a description of "all actions taken by Defendant to respond to any written requests under Daniel's Law." This Request cannot possibly lead to relevant discovery.  As Defendants have already explained, they have "not received any requests to take down information

pursuant to Daniel's Law from anyone except Plaintiffs." (*See* Defendants' Response to RFP 6.)

Accordingly, any "actions taken . . . to respond" to Plaintiffs' unilateral conduct—which is the only information responsive to this Interrogatory—cannot provide a basis for personal jurisdiction. *See, e.g.*, *Newman v. N.C. Ins. Underwriting Ass'n*, No. 20-cv-1464, 2020 U.S. Dist. LEXIS 212387, at *24 (D.N.J. Nov. 9, 2020) ("[Defendant's] phone call and letter . . . were merely responses to Plaintiff's actions. It is well-settled that unilateral activity on the part of a plaintiff does not make a defendant amenable to personal jurisdiction."); *Booker v. Twp. of Cinnaminson*, No. 12-cv-2786¸ 2012 U.S. Dist. LEXIS 147609, at *4 (E.D. Pa. Oct. 5, 2012) ("letters sent to [plaintiff] were in response to [plaintiff's] unilateral activity, and thus do not demonstrate the [defendant] deliberately targeted Pennsylvania"); *UMAC, Inc. v. Aqua-Gas AVK*, No. 04-cv-4022, 2005 U.S. Dist. LEXIS 6124, at *11 (E.D. Pa. Mar. 30, 2005) ("contacts [which] constitute responses to unilateral actions by [plaintiff] . . . cannot satisfy the requirement of contact within the forum state").

Plaintiffs argue that Defendants' response to their own unilateral activities is somehow relevant to personal jurisdiction. (*See* Mot. at 8.) But they fail to cite any case law which supports their theory. Moreover, tellingly, they fail to mention that their theory was rejected by the above-referenced state court just a few weeks

318965974v.6

ago. *See Atlas Data Privacy Corp. v. LexisNexis Risk*, BER-L-000875-24 (Law Div. June 6, 2025) ("the allegations that the unlawful actions occurred in New Jersey are *based on the unilateral activities of the Plaintiffs*") (emphasis added).

Additionally, Atlas appears to want to use the assignments of rights in this case as a sword and a shield. On the one hand, Atlas has provided various details about the take down notices and their assignors in this litigation (indeed, Atlas' counsel has spoken at length during various Court conferences regarding the universe of information they claim to have). But, now, in support of this motion, Atlas attempts to pull out its pockets to say that they have nothing and are not willing to do anything to obtain information about the emails sent/received by them on their systems. This is very obvious effort to drive up litigation costs (with no regard for Fed. R. Civ. P. 1) for Defendants. *See* Fed. R. Civ. P. 1, adv. comm. note (2015) ("the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action").[6]

---

[6] Plaintiffs attempt to lump together We Inform, People Searchers, and Infomatics with every single "Moving Defendant" in seeking responses to a number of RFPs because the requested documents purportedly relate to the "effects" test. Those requests are RFP 5 ("all documents" regarding communications with anyone "who sent Daniel's Law Requests"); RFP 14 ("All documents . . . relating to Defendant's receipt of nondisclosure requests"); and RFP 15 ("All documents . . . relating to Defendant's response to Daniel's Law requests"). Such requests are improper and seek irrelevant information for the reasons discussed above—*e.g.*, because the "effects test" does not apply, and jurisdiction cannot be based on Defendants' receipt or response to Plaintiffs' unilateral nondisclosure requests.

18

***Interrogatory No. 10***.  In ROG 10, Plaintiffs demand "any address or phone number of a New Jersey resident that remained available in the database associated with any of Defendant's products, services, or digital platforms 10 days or more after Defendant received a nondisclosure request[.]"

As a threshold matter, as noted above, Defendants only received nondisclosure requests from Plaintiffs.  As such, to the extent Defendants possess any responsive information—*i.e.*, contact information "that remained available . . . 10 days or more after Defendant received a nondisclosure request"— such information (Plaintiffs' own phone numbers and/or addresses) would already be in Plaintiffs' possession.  *See, e.g.*, Fed. R. Civ. P. 26(b)(1) (courts must consider "the parties' relative access to relevant information").

Further, Plaintiffs claim that the addresses and phone numbers requested in ROG 10 are relevant to the "effects test."  As discussed above, the "effects test" is inapposite because, *inter alia*, Daniel's Law is not an intentional tort.  (ECF No. 31 at p. 39) ("Daniel's Law does not mandate a specific intent standard of liability.").

Moreover, the issue of whether a covered person's protected information "remained available . . . 10 days or more after Defendant received a nondisclosure request" relates to the merits of Plaintiffs' claims—not personal jurisdiction. As Plaintiffs know well, Daniel's Law provides that "not later than 10 business days following receipt [of a nondisclosure request], a person, business, or association

shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person." *See* N.J.S.A. 56:8-166.1. Plaintiffs cannot use jurisdictional discovery as a guise to gather information regarding this element of their claim. *See Lasala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 478 (3d Cir. 2011) ("[T]his Court has cautioned against allowing jurisdictional discovery to serve as a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery.") (internal quotations omitted).

Lastly, it is irrelevant for personal jurisdiction whether a plaintiff's contact information merely "remained available" on any website of Defendant. Defendants made this point in their motion to dismiss for lack of personal jurisdiction (ECF No. 45) and, tellingly, Plaintiffs do not attempt to distinguish the case law cited therein. *See, e.g.*, *Hurley v. Cancun Playa Oasis Int'l*, No. 99-cv-574, 1999 WL 718556, at *3 (E.D. Pa. Aug. 31, 1999) (Bartle, J.) (concluding Pennsylvania lacked jurisdiction because there was no evidence "[defendant's] Web page was directed at Pennsylvania more than any other state"); *Hankins v. Doubletree Mgmt., LLC*, No. 19-cv-8698, 2022 WL 3013089, at *4 (D.N.J. July 29, 2022) (concluding New Jersey lacked jurisdiction because there was no evidence defendant was "directly targeting its web site to the [forum] state").

20

### III.    Plaintiffs Served Multiple Document Requests Which Are Not Proportional to Their Jurisdictional Discovery Needs.

Similar to Plaintiffs' interrogatories, Plaintiffs also seek to compel responses to document requests which are: (i) not proportional to jurisdictional discovery, and (ii) have already been addressed by Defendants.

***Request No. 1***.    In RFP 1, Plaintiffs request a sweeping, wide range of information, including "[a]ll documents" related to Defendants' "[o]wnership, registration, licensing, offering, or use of any product"; "[m]arketing, advertising, soliciting, or offering of any product"; and "[c]ontracts, agreements, or arrangements with any company or individual in New Jersey."

Defendants have already disclosed that they "do[] not engage in any advertising or marketing which is specifically designed for New Jersey residents." (*See* Defendants' Response to ROG 4.)  None of them offer products specifically designed for New Jersey residents.  Further, they "[have] not entered into any contracts or agreements with any New Jersey entity related to the provision of [their] products or services." (*See* Defendants' Response to ROG 5.)  In view of Defendants' disclosures to date, Plaintiffs have no legitimate need for any further information in response to RFP 1.  Notably, Plaintiffs' request for "[a]ll documents" fails to identify with any reasonable particularity what specific documents they seek, and/or what, if any, specific information in response to RFP 1 is missing from the disclosures of We Inform, Infomatics, and The People Searchers.  Without such specificity it is

21

anyone's guess as to what actual documents are responsive to a request for "[a]ll documents," or, better yet, how any Defendant is supposed to identify "[a]ll documents."

**_Request No. 2_**.  In RFP 2, Plaintiffs request "documents reflecting or relating to Defendant's revenues, profits, or income derived from any product or service that . . . makes available information subject to Daniel's Law."  Plaintiffs argue in their Motion that We Inform (but not Infomatics and People Searchers) failed to comply with RFP 2.[7]  For multiple reasons, Plaintiffs' argument regarding RFP 2 is meritless (and likely an unintentional oversight within their rambling submission).

**_First_**, We Inform _did_ produce documentation and specific written responses reflecting their revenues, profits, and income.  Indeed, We Inform's response to RFP 19 stated "the total amount of revenue [it] derived from the state of New Jersey during the period of January 1 through December 31, 2024 was $6,249.06, which was 1.89% of [its] total revenue."  The information that was provided is

---

[7]  Similarly, in moving to compel responses to RFP 3, Plaintiffs seek documents showing "Defendant's share of revenues, profits, or income derived from . . . New Jersey and any other state" from People Searchers (but not Infomatics or We Inform).  Plaintiffs' demand for documents from People Searchers under RFP 3 fails for the same reasons discussed above as to RFP 2.  People Searchers _did_ produce documentation and specific written responses reflecting their revenues, profits, and income.  (*See* RFP 19) (disclosing that People Searchers derived $24,758 from New Jersey in 2023).  Further, this is the first time Plaintiffs are making this request—their June 4 letter did not allege that People Searchers' response to RFP 3 was deficient.

directly responsive to the request, and it is not clear what Plaintiffs' argument is to the contrary.  Accordingly, Plaintiffs' argument that We Inform "refused to produce any responsive documents" is a <u>false</u>.  (Mot. at 22.)

**Second**, Plaintiffs' June 4 letter did not allege that We Inform's response to RFP 2 was deficient.  As such, this is first time Plaintiffs are claiming that We Inform should amend its response on this issue, and it is not clear what additional information Plaintiffs are seeking.  If Plaintiffs actually wanted additional discovery from We Inform, they should have said so <u>*before*</u> filing a discovery motion.  *See, e.g.*, L. Civ. R. 37.1(b)(1) ("Discovery motions must be accompanied by an affidavit . . .   certifying that the moving party has conferred with the opposing party in a good faith effort  to resolve by agreement the issues raised by the motion").

<u>**Request No. 6**</u>.  In RFP 6, Plaintiffs request "[a]ll documents reflecting or relating to Defendant's involvement with any related entity's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests."  In response, Defendants reiterated that they only received nondisclosure requests from Plaintiffs.  As noted above, Defendants' response to Plaintiffs' unilateral communications cannot provide the basis for personal jurisdiction. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("a defendant will not be haled into a jurisdiction solely as a result of . . . unilateral activity of another party").

23

Plaintiffs hypothesize that documents regarding "Defendant's involvement with any related entity's communications" might theoretically be relevant because "if a Defendant relies on an affiliate to process Daniel's Law requests or otherwise communicate with covered persons, documents evidencing the Defendant's involvement in that related entity's communications with Plaintiffs and other covered persons are relevant to . . . the effects test." Setting aside the numerous issues with Plaintiffs' reliance on the "effects test," Plaintiffs' hypothesis is pointless. None of We Inform, People Searchers, or Infomatics rely on any affiliates to "process" Daniel's Law requests. Plaintiffs' wild (and incorrect) conjecture is not a legitimate basis for discovery. *See Cooper v. Universal Stainless & Alloy Prods.*, No. 24-cv-798, 2025 U.S. Dist. LEXIS 99603, at *13 (W.D. Pa. May 27, 2025) (denying motion to compel which was based on plaintiff's "broad and speculative assertions").

**_Request No. 18_**. In RFP 18, Plaintiffs request "[a]ll documents reflecting or relating to the number of individuals with New Jersey addresses in any and all databases or on any sites that Defendant utilizes."

In response, each Defendant disclosed the number of individuals associated with New Jersey addresses through its systems. We Inform disclosed a total of 91,279 individuals; Infomatics disclosed 285,723 individuals; and People Searchers disclosed 210,671 individuals. Plaintiffs argue in the vaguest possible terms that

24

"the Court should compel discovery" (*see* Mot. at 34), but they have not explained *what additional discovery they purportedly need*. Tellingly, Plaintiffs' June 4 letter does not allege that We Inform and People Searchers' responses to RFP 18 were deficient—this is the first time Plaintiffs are making such a claim. Defendants are in no position to guess as to what discovery may (or may not) be responsive to such an ambiguous and vague request.

  ***Request No. 19***. In RFP 19, Plaintiffs request "[a]ll documents reflecting or relating to the products or services that Defendant has . . . made available to businesses and individuals with information that includes New Jersey addresses, and the *total amount* and *percentage* of Defendant's revenue from those services or products." (emphasis added).

  In response, Defendants provided the "total amount" and the "percentage" of their revenue derived from the State of New Jersey. Defendants stated that We Inform derived $6,249.06 from New Jersey in 2023 (which was merely 1.89% of its total revenue); People Searchers derived $24,758 from New Jersey in 2023 (which was merely 1.42% of its total revenue); and Infomatics derived $60,198 from New Jersey in 2023 (which was merely 1.47% of its total revenue).

  Plaintiffs argue that Infomatics, People Searchers, and We Inform provided "some numbers" but did not produce "underlying documents." Plaintiffs' argument is meritless for two reasons. ***First***, Plaintiffs are simply wrong—Defendants *did*

produce exactly the information requested regarding their revenue in New Jersey. **Second**, Plaintiffs have not stated any reason why the documents and "numbers" already disclosed by Defendants are not sufficient for the limited purpose of jurisdictional discovery. *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018) ("jurisdictional discovery is not a license for the parties to engage in a fishing expedition and [the] District Court should take care to circumscribe the scope of discovery") (internal quotations omitted).

Additionally, it is not at all clear as to what actual, specific documents are being sought by Plaintiffs. And to the extent that those documents would simply be duplicative of the information that has already been provided, it is not clear what the purpose of such duplication (especially in light of Fed. R. Civ. P. 1) would serve in this circumstance.

**_Request No. 20_**. In RFP 20, Plaintiffs request "[a]ll documents reflecting or relating to the businesses and individuals in the State of New Jersey that have received products or services from Defendant, and the total amount and percentage of revenue Defendant has earned from those businesses and individuals."

Plaintiffs' argument regarding RFP 20 is identical to their above argument on RFP 19. They claim "Informatics [sic], People Searchers, and We Inform provided some numbers but no underlying documents." (Mot. at 35.) Their argument is false for the same reasons as RFP 19.

26

Furthermore, Plaintiffs' June 4 letter does not allege that Defendants' responses to RFP 20 were deficient. If they actually believed Defendants must supplement their responses to RFP 20, they should have said so *before* filing a discovery motion. *See Cmty. Ass'n Underwriters of Am. v. Queensboro Flooring Corp.*, No. 10-cv-1559, 2014 U.S. Dist. LEXIS 51525, at *12 (M.D. Pa. Apr. 15, 2014) (denying motions to compel discovery, and stating "it appears that no good faith effort was made whatsoever to resolve or narrow the discovery disputes at issue prior to filing").

*__Request No. 23__*. In RFP 23, Plaintiffs request "[a]ll documents referenced or identified by Defendant in response to Plaintiffs' First Set of Interrogatories." Without explanation, Plaintiffs argue that "People Searcher [sic], We Inform, and First Direct have thus far failed to comply with RFP 23." Plaintiffs' argument is <u>false</u> for multiple reasons.

*First*, as with many requests above, Plaintiffs' did not mention any deficiencies in We Inform and People Searchers' response to RFP 23 in their June 4 letter.

*Second*, We Inform and People Searchers are not refusing to produce responsive documents. They already told Plaintiffs as much, stating in response to RFP 23 that they "agree[] to produce the documents requested in Request No. 23."

Defendants are not withholding any responsive, nonprivileged, non-work product documents in response to this Request.[8]

### IV. Plaintiffs Served Multiple Document Requests Which Are Irrelevant to Jurisdictional Discovery

Lastly, Plaintiffs seek to compel responses to four document requests—RFP Nos. 7, 13, 16, and 21—which are completely irrelevant to personal jurisdiction.

***Request No. 7***.  In RFP 7, Plaintiffs request "[a]ll documents reflecting or relating to Defendant's policies, procedures, or practices for: (a) Processing, responding to, or complying with Daniel's Law Requests from New Jersey residents sent to Defendant or any other related entity; and (b) Handling information related to New Jersey residents."  Plaintiffs argue that RFP 7 seeks information "relevant to show (i) knowledge that the brunt of the harm caused by disclosure following receipt of a nondisclosure request will be felt in New Jersey, as required under the effects test . . . and (ii) that the Defendant systematically served a market in New Jersey."  (Mot. at 27) (internal quotations and brackets omitted).

---

[8]  Defendants have not produced their attorney-client communications and work product documents associated with the defense of these actions, including communications with the undersigned counsel.  Defendants have not served a privilege log of such communications, and Plaintiffs do not move to compel any such log in their Motion.  To the extent Plaintiffs assert that Defendants must provide a log of such privileged and work product documents, Defendants have the full expectation that all parties, including all Plaintiffs, will be providing a privilege log for all of their privileged and work product documents, as well.

28

Plaintiffs' reliance on the "effects test" is meritless for the reasons discussed above (*e.g.*, Daniel's Law is not an "intentional tort").  Furthermore, Plaintiffs have already received more than enough discovery to understand that Defendants did not "systematically serve" the State of New Jersey (*e.g.*, no headquarters in New Jersey, no offices in New Jersey, no employees in New Jersey, no products specifically designed for New Jersey, no advertising specifically designed for New Jersey, and approximately 99% of their revenue is from outside New Jersey).  Plaintiffs cannot credibly argue they need more information to figure out whether these Defendants had a "systematic" New Jersey presence.  Clearly, they did not.

Instead, this request is a prime example of Plaintiffs' abuse of the opportunity to conduct discovery relevant to personal jurisdiction.  *See* Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2008.3 (3d ed. 2024) ("a district court may properly refuse or limit jurisdictional discovery if . . . the proposed discovery seems unlikely to shed light on the jurisdictional question.").

***Request No. 13***.  In RFP 13, Plaintiffs request "all documents reflecting or relating to any [communications] . . . by Defendant or any other related entity regarding the introduction and passage of Daniel's Law."  Once again, Plaintiffs claim such information is relevant to the "effects test" (which does not apply here).  *See Walden v. Fiore*, 571 U.S. 277, 277-78 (2014) (holding "effects test" does not create end-run around "due process" jurisdictional requirements).

Plaintiffs also argue that RFP 13 is relevant to whether Defendants "purposefully availed" themselves of the forum state. But such an argument misunderstands the concept of specific jurisdiction. Defendants' communications "regarding the introduction and passage of Daniel's Law" have nothing to do with specific jurisdiction unless: (i) Defendants' made these communications while *purposefully contacting the forum state*; and (ii) Plaintiffs' claims *arise out of or relate to Defendants' purposeful contacts in the state*. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007) ("Identifying some purposeful contact with the forum is but the first step in the specific-jurisdiction analysis. The plaintiffs' claims must also 'arise out of or relate to' at least one of those contacts"). Plaintiffs conveniently elide over this well-settled rule in their attempt to go fishing into all of Defendants' communications regarding Daniel's Law. Defendants never contacted anyone in New Jersey regarding Daniel's Law other than, as discussed above, in response to Plaintiffs' unilateral requests. As such, Defendants do not possess any information in response to RFP 13 which has anything to do with personal jurisdiction.[9] *See Buccellati Holding Italia SPA v. Laura Buccellati, LLC*,

---

[9] Assuming *arguendo* "all documents reflecting or relating to any [communications] . . . by Defendant" regarding Daniel's Law were relevant to personal jurisdiction (they are not), it would not be remotely proportional to require Defendants to search their systems for "*all*" such communications. Conversely, to the extent Plaintiffs argue they are seeking something other than

935 F. Supp. 2d 615, 623 (S.D.N.Y. 2013) ("Courts have held repeatedly that a defendant's responses to the unilateral acts of a plaintiff are not contacts with the forum state sufficient to establish personal jurisdiction") (internal quotations omitted).

***Request No. 16***.  In RFP 16, Plaintiffs request "[a]ll documents reflecting or relating to any changes to Defendant's processes regarding Daniel's Law nondisclosure requests or any other requests to remove personal information of New Jersey residents."  In their Motion, Plaintiffs argue that "documents evidencing changes to processes for nondisclosure requests show Defendants' knowledge of their duties under Daniel's Law, which . . . goes to whether a subsequent disclosure is targeted at the covered person in New Jersey."  (Mot. at 33.)

Plaintiffs have, once again, failed to tether their request to the concept of specific jurisdiction.  Plaintiffs do not explain how Defendants' "processes regarding Daniel's Law nondisclosure requests" constitutes *contact with the forum state*, as required for personal jurisdiction.  The issue of whether Defendants had "knowledge" of any supposed "duties under Daniel's Law" is beside the point.[10]

---

"*all*" documents, such an argument would only highlight the generalized and ambiguous nature of this request.

[10]  Plaintiffs attempt to lump together We Inform, People Searchers, and Infomatics with every single "Moving Defendant" in seeking responses to a number of RFPs because the requested documents purportedly relate to all defendants' knowledge of their New Jersey law obligations.  Those requests are RFP 10 ("all documents"

31

*See Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 411 n.9 (1984) (to establish specific jurisdiction, plaintiff must show the action is "arising out of or related to the defendant's contacts with the forum"). A defendant's mere "knowledge" that a plaintiff in the forum will be harmed does not show that its actions "expressly targeted" the forum for purposes of the "effects test," or any other prerequisite to establishing personal jurisdiction. *Hasson v. FullStory, Inc.*, 114 F.4th 181, 196 (3d Cir. 2024) ("We have **rejected the argument that the 'expressly aiming' requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state**." (emphasis added)) (internal quotations omitted).

*__Request No. 21__*. In RFP 21, Plaintiffs request "[a]ll documents reflecting or relating to Defendant's modification of any product or service to address New Jersey laws and regulations." Plaintiffs argue this Request seeks relevant information because, similar to RFP 16, it may "show Defendants' knowledge that they . . . are subject to New Jersey regulations governing data privacy." (Mot. at 36.) But Plaintiffs' request is focused on the wrong issue. Their discovery requests are

---

"concerning training for compliance with New Jersey data-privacy law"); RFP 11 ("evaluations conducted to determine whether products . . . comply with New Jersey law"); RFP 12 ("all documents" regarding "opt-out, exclusion, or suppression options . . . provided by Defendant"); RFP 23 ("all documents" regarding "actions taken by Defendant to preserve documents"). Such requests are improper and seek irrelevant information—*e.g.*, information which does not tend to show contacts with the forum—for the reasons discussed above.

318965974v.6

supposed to be focused on Defendants' alleged _contacts_ with Plaintiffs _in the forum state_ (the only relevant issue at this stage).  The issue of whether these out-of-state Defendants knew about purported "New Jersey regulations governing data privacy" is irrelevant as it has nothing to do with personal jurisdiction.  (_See id_.); _Robinson v. Horizon Blue Cross-Blue Shield_, No. 12-cv-2981¸ 2013 U.S. Dist. LEXIS 180325, at *22 (D.N.J. Dec. 23, 2013) (courts will not "allow a party to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so") (citations omitted); _Smith v. Lyons, Doughty & Veldhuis, P.C._, No. 07-cv-5139¸ 2008 U.S. Dist. LEXIS 56725, at *16 (D.N.J. July 23, 2008) ("Discovery should not serve as a fishing expedition").

Ultimately, in view of Plaintiffs' motion to compel discovery on the above more than twenty (20) sweeping requests, they are clearly attempting to weaponize limited jurisdictional discovery for improper purposes.  Given that Plaintiffs are moving to compel "all" documents regarding the passage of Daniel's Law and "all" documents regarding Defendants' response to the statute and Plaintiffs' alleged nondisclosure requests (_see, e.g._, RFPs 13 and 21), it boggles the mind what remaining areas of discovery, if any, Plaintiffs would request during any merits phase of this case.

Accordingly, this Court should follow the Third Circuit's instruction to "take care to circumscribe the scope of discovery" on personal jurisdiction.  _Shuker v._

33

*Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018).  Otherwise, Plaintiffs' overbroad requests threaten to force Defendants (who merely earned 1% of their revenue in New Jersey) to incur *significant* defense costs, all before Defendants ever have an opportunity to be heard in an appropriate forum.  *See, e.g., Spina v. Refrigeration, Serv. & Eng'g*, No. 14-cv-4230, 2014 U.S. Dist. LEXIS 142358, at *8 (E.D. Pa. Oct. 7, 2014) (plaintiffs shall not "utiliz[e] discovery . . . to impose high discovery costs in an effort to bludgeon the defendant into settling the case").

The need for circumscribed jurisdictional discovery is particularly appropriate here, where Plaintiffs do not (and cannot) dispute that Defendants are not organized or headquartered in New Jersey; are not registered to do business in New Jersey; have no real property in New Jersey; have no employees who work or reside in New Jersey; offer no products specifically designed for New Jersey residents; each Defendant's revenue derives at least 98.5% New Jersey from customers outside of New Jersey; and over 98.5% of the reports provided by Defendants pertain to individuals residing outside of New Jersey.  The conclusion as to whether personal jurisdiction is proper is an obvious one—it is not proper.  The parties do not need extensive discovery to explore this issue.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion to compel personal jurisdiction discovery in its entirety.

34

Dated: July 14, 2025            SEYFARTH SHAW LLP

By: */s/ Robert T. Szyba*
    Robert T. Szyba
    Max A. Scharf
    SEYFARTH SHAW LLP
    620 Eighth Avenue, 32nd Floor
    New York, New York  10018
    Telephone:  (212) 218-5500
    rszyba@seyfarth.com
    mscharf@seyfarth.com

*Attorneys for Defendants We Inform, LLC,*
*Infomatics, LLC, & The People Searchers, LLC*

35