# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., Plaintiff, v. WE INFORM, LLC, et al., Defendant. | Civil Action No. 24-4037 |
| ATLAS DATA PRIVACY CORPORATION, et al., Plaintiff, v. INFOMATICS, LLC, et al., Defendant. | Civil Action No. 24-4041 |
| ATLAS DATA PRIVACY CORPORATION, et al., Plaintiff, v. THE PEOPLE SEARCHERS, LLC, et al., Defendant. | Civil Action No. 24-4045 |
| ATLAS DATA PRIVACY CORPORATION, et al., Plaintiff, v. INNOVIS DATA SOLUTIONS INC., et al. Defendant. | Civil Action No. 24-4176 |
| ATLAS DATA PRIVACY CORPORATION, et al., Plaintiff, v. RESTORATION OF AMERICA, et al., Defendant. | Civil Action No. 24-4324 |
| ATLAS DATA PRIVACY CORPORATION, et al., Plaintiff, v. SMARTY, LLC, et al., Defendant. | Civil Action No. 24-8075 |

## INTERVENOR ATTORNEY GENERAL OF NEW JERSEY'S CONSOLIDATED BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS BASED ON PREEMPTION

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 080
Trenton, New Jersey 08625
(862) 350-5800
Liza.Fleming@njoag.gov
*Attorneys for Intervenor*

Michael L. Zuckerman (NJ Bar No. 427282022)
  *Deputy Solicitor General*

Kashif T. Chand (NJ Bar No. 016752008)
  *Assistant Attorney General*

Liza B. Fleming (NJ Bar No. 441912023)
Marie V. Cepeda Mekosh (NJ Bar No. 435342023)
Patrick Misale (NJ Bar No. 401352022)
Kathleen C. Riley (NJ Bar No. 307982019)
  *Deputy Attorneys General*

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ...........................................................................1

BACKGROUND ...............................................................................................2

    A.  Daniel's Law.........................................................................................2

    B.  The Instant Actions.............................................................................3

        1.  The We Inform Defendants. ...........................................................4

        2.  The Restoration Defendants. ..........................................................5

        3.  Innovis ..........................................................................................6

STANDARD OF REVIEW ...............................................................................6

ARGUMENT ...................................................................................................7

  I.   THE NVRA DOES NOT PROVIDE A BASIS FOR DISMISSAL...............9

  II.  SECTION 230 DOES NOT PROVIDE A BASIS FOR DISMISSAL.........15

  III.  THE FCRA DOES NOT PROVIDE A BASIS FOR DISMISSAL..............23

CONCLUSION................................................................................................30

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Altria Group, Inc. v. Good*,
  555 U.S. 70 (2008) ..................................................................................8

*Anderson v. TikTok, Inc.*,
  116 F.4th 180 (3d Cir. 2024) ...............................................................15

*Anthony v. Yahoo Inc.*,
  421 F. Supp. 2d 1257 (N.D. Cal. 2006) ...............................................18

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013) ................................................................................8, 9

*Arizona v. United States*,
  567 U.S. 387 (2012) .............................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................6, 7

*Bates v. Dow Agrosciences LLC*,
  544 U.S. 431 (2005) ...............................................................................8

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) .........................................................21, 22

*Bonilla v. Ancestry.com Operations Inc.*,
  574 F. Supp. 3d 582 (N.D. Ill. 2021) ...............................................16, 20

*Bruesewitz v. Wyeth, Inc.*,
  561 F.3d 233 (3d Cir. 2009) ...................................................................8

*Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.*,
  706 F. Supp. 3d 489 (D.N.J. 2023) ......................................................25

*Calise v. Meta Platforms, Inc.*,
  103 F.4th 732, (9th Cir. 2024) .........................................................15, 16

*Consumer Data Indus. Ass'n v. Platkin*,
   19-cv-19054, 2024 WL 1299256 (D.N.J. Mar. 27, 2024) ...................................26

*Cortez v. Trans Union, LLC*,
   617 F.3d 688 (3d Cir. 2010)...................................................................................24

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000) ................................................................................................8

*Def. Distributed v. Platkin*,
   697 F. Supp. 3d 241 (D.N.J. 2023) .......................................................................15

*Dennis v. MyLife.Com, Inc.*,
   20-cv-954, 2021 WL 6049830 (D.N.J. Dec. 20, 2021) ........................................23

*Dimeo v. Max*,
   248 F. App'x 280 (3d Cir. 2007) ...........................................................................22

*Doe v. Internet Brands, Inc.*,
   824 F.3d 846 (9th Cir. 2016).................................................................................15

*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021) ..................................................................18

*Elliott v. Donegan*,
   469 F. Supp. 3d 40 (E.D.N.Y. 2020) ............................................................... 21, 22

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008).................................................................. 18, 20, 21

*Farina v. Nokia, Inc.*,
   625 F.3d 97 (3d Cir. 2010)......................................................................................7

*Frisby v. Schultz*,
   487 U.S. 474 (1988) ................................................................................................9

*FTC v. Accusearch Inc.*,
   570 F.3d 1187 (10th Cir. 2009)........................................................... 17, 18, 19, 21

*FTC v. LeadClick Media, LLC*,
   838 F.3d 158 (2d Cir. 2016)..................................................................................16

*Galper v. JP Morgan Chase Bank, N.A.*,
  802 F.3d  437 (2d Cir. 2015) ................................................................25

*Gonzalez v. Arizona*,
  677 F.3d 383 (9th Cir. 2012) ..................................................................9

*Henderson v. Source for Pub. Data, L.P.*,
  53 F.4th 110 (4th Cir. 2022) .................................................................17

*Husted v. A. Philip Randolph Inst.*,
  584 U.S. 756 (2018) ................................................................ 10, 11, 13

*Individual Reference Servs. Grp., Inc. v. FTC*,
  145 F. Supp. 2d 6 (D.D.C. 2001) .................................................... 26, 28

*Kellman v. Spokeo, Inc.*,
  599 F. Supp. 3d 877 (N.D. Cal. 2022) ...................................................19

*Klotz v. Celentano Stadtmauer & Walentowicz LLP*,
  991 F.3d 458 (3d Cir. 2021) ....................................................................7

*Kratovil v. City of New Brunswick*,
  _ A.3d _, 2025 WL 1689346 (N.J. June 17, 2025) ..................................9

*Krause v. RocketReach, LLC*,
  561 F. Supp. 3d 778 (N.D. Ill. 2021) .....................................................19

*Lawrence v. City of Philadelphia*,
  527 F.3d 299 (3d Cir. 2008) ..................................................................11

*Lukis v. Whitepages Inc.*,
  454 F. Supp. 3d 746 (N.D. Ill. 2020) ............................................... 19, 20

*Lupian v. Joseph Cory Holdings LLC*,
  905 F.3d 127 (3d Cir. 2018) ..................................................... 7, 8, 27, 28

*MD Mall Assocs., LLC v. CSX Transp., Inc.*,
  715 F.3d 479 (3d Cir. 2013) ....................................................................7

*Nat'l Funeral Servs., Inc. v. Rockefeller*,
  870 F.2d 136 (4th Cir. 1989) ...................................................................8

*Obado v. Magedson¸*
    13-cv-2382, 2014 WL 3778261 (D.N.J. July 31, 2014) .......................................23

*Pennsylvania v. Navient Corp.,*
    967 F.3d 273 (3d Cir. 2020).........................................................................8

*Philips v. County of Allegheny,*
    515 F.3d 224 (3d Cir. 2008)........................................................................7

*Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.,*
    136 F.4th 456 (3d Cir. 2025)......................................................................12

*Public Interest Legal Foundation, Inc. v. Bellows,*
    92 F.4th 36 (1st Cir. 2024) ............................................................... 13, 14

*Runyon v. ClearStar, Inc.,*
    24-cv-1519, 2025 WL 1530582 (E.D.N.Y. May 29, 2025)................................26

*Sikkelee v. Precision Airmotive Corp.,*
    822 F.3d 680 (3d Cir. 2016).......................................................................8

*True the Vote v. Hosemann,*
    43 F. Supp. 3d 693 (S.D. Miss. 2014 ...................................................13

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001)....................................................................................24

*Voter Reference Found., LLC v. Torrez,*
    727 F. Supp. 3d 1014 (D.N.M. 2024) ......................................... 13, 14

*Voting for Am., Inc. v. Steen,*
    732 F.3d 382 (5th Cir. 2013)............................................................. 11, 12

*Wilson v. Ancestry.com LLC,*
    653 F. Supp. 3d 441 (S.D. Ohio 2023) .................................................19

## Constitutional Provisions

U.S. Const. art. VI, cl. 2 ................................................................................8

U.S. Constitution, Art. I., § 4, cl. 1 .........................................................9

**Statutes**

15 U.S.C. § 1681 .................................................................................................. 2, 24

15 U.S.C. § 1681a ........................................................................................ 24, 26, 27

15 U.S.C. § 1681b ........................................................................................ 25, 29, 30

15 U.S.C. § 1681c .............................................................................................. 24, 25

15 U.S.C. § 1681t .............................................................................................. 25, 29

47 U.S.C. § 230 ................................................................................................ passim

52 U.S.C. § 20501 ................................................................................................... 12

52 U.S.C. § 20507 ................................................................................ 10, 11, 13, 14

52 U.S.C. §§ 20501-20511 ............................................................................... passim

N.J. Stat. Ann. § 2C:20-31.1 .................................................................................... 3

N.J. Stat. Ann. § 19:31-15 ...................................................................................... 11

N.J. Stat. Ann. § 47:1B-1 to -4 ................................................................................ 3

N.J. Stat. Ann. § 56:8-166.1 ............................................................................ passim

N.J. Stat. Ann. § 56:8-166.3 ................................................................................. 2,3

Pub. L. No. 104-104, Title V (1996) ...................................................................... 15

**Other Authorities**

About Us, We Inform,
    https://tinyurl.com/7xrpxe2x (last visited July 14, 2025) ..................................... 4

Data Broker Registration for Infomatics LLC, Calif. Dep't of Just.,
    https://tinyurl.com/yj4huak7 (last visited July 14, 2025) ..................................... 4

H.R. Rep. Conf. No. 104-458 (1996) ....................................................................... 15

Homepage, VoteRef,
    https://tinyurl.com/44va9fct (last visited July 14, 2025) ....................................... 5

How To, VoteRef,
    https://tinyurl.com/4jazxcse (last visited July 14, 2025) .......................................5

Innovis Privacy Notice, Innovis (Oct. 19, 2023),
    https://tinyurl.com/3tvzzan4 ............................................................................6

Privacy Policy, Smarty (July 2, 2025),
    https://tinyurl.com/rntm78wk ........................................................................4, 5

PrivateReports,
    https://tinyurl.com/3br3b388 (last visited July 14, 2025).....................................4

PrivateReports,
    https://tinyurl.com/3br3b388 (last visited July 14, 2025) ....................................4

People Searcher,
    https://tinyurl.com/dt2xfebp (last visited July 14, 2025)......................................4

S. Conf. Rep. No. 104-230 (1996) .......................................................................15

S. Rep. No. 104-23 (1995) ...................................................................................15

Smarty,
    https://tinyurl.com/3vzfbn3t (last visited July 14, 2025).....................................5

Your Privacy Rights, People Searchers,
    https://tinyurl.com/5dkxjp2d (last visited July 14, 2025)..................................4, 5

Your Privacy Rights, PrivateReports,
    https://tinyurl.com/vr3ztu67 (last visited July 14, 2025)......................................5

Your Privacy Rights, We Inform,
    https://tinyurl.com/msh6k6u2 (last visited July 14, 2025) .................................4, 5

## PRELIMINARY STATEMENT

Daniel's Law serves undisputedly compelling interests by allowing covered persons—certain public servants and family members in their household—to request that entities cease disclosing their home addresses or unpublished home telephone numbers. *See* N.J. Stat. Ann. § 56:8-166.1, -166.3. Three groups of defendants ask this Court to dismiss the complaints against them by arguing that three federal laws respectively preempt application of these Daniel's Law provisions to them. Their arguments are misguided and provide no basis for dismissal.

First, two defendants who publish voter information err in seeking dismissal based on the National Voter Registration Act (NVRA), 52 U.S.C. §§ 20501-20511 *See* ECF 16-1 at 4-5, No. 24-cv-4324 (Restoration MTD). The NVRA requires in relevant part that state-maintained voter-related records be made available by the government for inspection. That is wholly consistent with Plaintiffs' allegations regarding these private entities' disclosure and re-disclosure of their information.

Second, defendants who maintain websites err in seeking dismissal based on Section 230 of the Communications Decency Act (CDA), 47 U.S.C. § 230. *See* ECF 34-1 at 6-10, No. 24-cv-8075 (Smarty MTD); ECF 46-1 at 18-21, No. 24-cv-4041 (Infomatics MTD); ECF 45 at 18-21, No. 24-cv-4037 (We Inform MTD). Section 230 promotes moderation of user-generated content on the Internet. That too is wholly consistent with allegations regarding private parties' *own* disclosures.

1

Finally, Innovis Data Solutions errs in seeking dismissal based on the Federal Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681-1681x. *See* ECF 45-5 at 18-23, No. 24-cv-4176 (Innovis MTD). The FCRA regulates disclosure of addresses and phone numbers only within specific credit-reporting contexts. That too is consistent with allowing Plaintiffs' allegations, which do not identify reporting that would fall within those specific contexts, to proceed to discovery. While Defendants can of course seek to renew preemption arguments at summary judgment based on discovery about the specific disclosures Plaintiffs seek to challenge, none of these theories supports dismissal. This Court should accordingly deny each of these defendants' preemption-based motions to dismiss.

## BACKGROUND

### A.    Daniel's Law.

Daniel's Law serves "to enhance the safety and security of certain public officials in the justice system" so they can "carry out their official duties without fear of personal reprisal." N.J. Stat. Ann. § 56:8-166.3. As relevant, the law provides judges, law-enforcement officers, prosecutors, child-protective-services investigators, and their immediate family members living in the same household (collectively, "covered persons") with a civilly enforceable right to request that a "person, business, or association" not "disclose … on the Internet or otherwise make available" their home address or unpublished home telephone number. *Id.* § 56:8-166.1(a)(1), (d). While the law has other components as well, *e.g.*, N.J. Stat. Ann.

2

§§ 2C:20-31.1, 47:1B-1 to -4, the preemption arguments at issue center on this civil

provision, so this brief refers to Section 56:8-166.1 as "Daniel's Law" for simplicity.

To invoke Daniel's Law's protection, an "authorized person" must send valid

"written notice" requesting that the recipient "cease the disclosure of the

information." *Id.* § 56:8-166.1(a)(2). The recipient then has ten business days to do

so. *Id.* § 56:8-166.1(a)(1) . If the recipient fails to comply, they are civilly liable. *Id.*

§ 56:8-166.1(c). A covered person may assign their civil claim. *Id.* § 56:8-166.1(d).

### B.    The Instant Actions.

Plaintiffs, including Atlas Data Privacy Corporation as assignee for a number

of covered persons, allege Defendants failed to cease disclosing covered information

within ten business days of receiving valid requests. *E.g.*, Compl. ¶¶ 25-26, 57-63,

No. 24-cv-04037.[1] Plaintiffs allege that each defendant is "an entity that discloses or

re-discloses on the Internet or otherwise makes available the home addresses and/or

unpublished home telephone numbers of covered persons," for-profit, *e.g.*, *id.* ¶ 36,

and that after sending a nondisclosure request (via email), each defendant failed to

cease disclosing the relevant information, thus violating the law, *e.g.*, *id.* ¶¶ 58-63.

Several defendants moved to dismiss on the basis of as-applied preemption.

On June 14, 2024, Defendants Restoration America and Voter Reference Foundation

---

[1] *See* No. 24-cv-4041 (Infomatics); No. 24-cv-8075 (Smarty); No. 24-cv-4037 (We Inform); No. 24-cv-4045 (People Searchers); No. 24-cv-4324 (Restoration/Voter Reference); No. 24-cv-4176 (Innovis).

(Restoration Defendants) moved to dismiss under the NVRA. *See* Restoration MTD. On March 18, 2025, Defendants We Inform, Infomatics, People Searchers, and Smarty (We Inform Defendants) moved to dismiss under Section 230 of the CDA. *See* Smarty MTD; Infomatics MTD; We Inform MTD. That same day, Innovis moved to dismiss under the FCRA. *See* Innovis MTD.

          1.   <u>The We Inform Defendants.</u>

The We Inform Defendants are data brokers.[2] We Inform offers a "Public Records Search" and advertises that it creates "accurate, comprehensive reports on almost anyone in the USA."[3] Infomatics and People Searchers operate websites that advertise "Instant Background Checks."[4] All three defendants' privacy policies provide that the companies collect "[p]ublicly [a]vailable [i]nformation from various databases, government entities, commercial data providers, and websites to create

---

[2] *See* Your Privacy Rights, We Inform, https://tinyurl.com/msh6k6u2 (last visited July 14, 2025); Data Broker Registration for Infomatics LLC, Calif. Dep't of Just., https://tinyurl.com/yj4huak7 (last visited July 14, 2025); PrivateReports, https://tinyurl.com/3br3b388 (last visited July 14, 2025); Privacy Policy, Smarty (July 2, 2025), https://tinyurl.com/rntm78wk.

[3] About Us, We Inform, https://tinyurl.com/7xrpxe2x (last visited July 14, 2025).

[4] PrivateReports, https://tinyurl.com/3br3b388 (last visited July 14, 2025); People Searcher, https://tinyurl.com/dt2xfebp (last visited July 14, 2025); Your Privacy Rights, People Searchers, https://tinyurl.com/5dkxjp2d (last visited July 14, 2025).

our reports and provide our Site."[5] Similarly, Smarty operates a website that offers address-verification services and address-enrichment products.[6] Smarty's website states that it obtains information about individuals from sources such as "public databases, joint marketing partners, affiliate programs, data providers, social media platforms, and from other third parties."[7]

    2. <u>The Restoration Defendants</u>.

  The Restoration Defendants are 501(c)(4) organizations that operate the website VoteRef.com, which "provide[s] public access to official government data pertaining to elections, including voter registration rolls."[8] VoteRef.com allows users to search for individual voters and obtain a profile that includes an individual's voter registration address, party affiliation, and voter history.[9]

---

[5] Your Privacy Rights, We Inform, https://tinyurl.com/msh6k6u2 (last visited July 14, 2025); Your Privacy Rights, PrivateReports, https://tinyurl.com/vr3ztu67 (last visited July 14, 2025); Your Privacy Rights, People Searchers, https://tinyurl.com/5dkxjp2d (last visited July 14, 2025).

[6] Smarty, https://tinyurl.com/3vzfbn3t (last visited July 14, 2025).

[7] Privacy Policy, Smarty (July 2, 2025), https://tinyurl.com/rntm78wk.

[8] Homepage, VoteRef, https://tinyurl.com/44va9fct (last visited July 14, 2025).

[9] How To, VoteRef, https://tinyurl.com/4jazxcse (last visited July 14, 2025).

3.    Innovis

Defendant Innovis operates a consumer reporting agency (CRA) as part of its broader business. Innovis MTD 6. Innovis, like other CRAs, provides consumer reports to third parties who certify that they have a "permissible purpose" under the FCRA to obtain those reports. *Id.* But Innovis also offers other services not covered by the FCRA, including services for "credit, receivables management, fraud prevention, and authentication purposes" using "personal information sourced from and made publicly available by federal, state, or local governments."[10]

\*    \*    \*

On June 9, 2025, this Court permitted the Attorney General to file a consolidated brief addressing Defendants' preemption defenses under the NVRA, Section 230 of the CDA, and the FCRA. ECF 62, No. 24-4037.

## STANDARD OF REVIEW

In assessing a Rule 12(b)(6) motion to dismiss, a court asks only whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court therefore must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]," *Philips v. County*

---

[10] Innovis Privacy Notice, Innovis (Oct. 19, 2023), https://tinyurl.com/3tvzzan4.

*of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), while evaluating plaintiff's "legal conclusions" for itself, *Iqbal*, 556 U.S. at 678. "To prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense" such as preemption, "a defendant must show that 'the defense is apparent on the face of the complaint and documents relied on in the complaint.'" *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130-31 (3d Cir. 2018) (citation omitted).

## ARGUMENT

"Federal law can preempt state law in three ways: (1) express preemption; (2) field preemption; or (3) conflict preemption." *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 463 (3d Cir. 2021) (footnote omitted). Defendants press only express and conflict preemption. "Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law." *Farina v. Nokia, Inc.*, 625 F.3d 97, 115 (3d Cir. 2010). Conflict preemption arises "where it is impossible for a private party to comply with both state and federal law, or where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 495 (3d Cir. 2013). Whether preemption applies "is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

7

While federal law is the "supreme Law of the Land," U.S. Const. art. VI, cl. 2, "all preemption cases 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress,'" *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 687 (3d Cir. 2016) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). Applying this baseline presumption, courts disfavor preemption when faced with two plausible readings of a statute. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005); *see Bruesewitz v. Wyeth, Inc.*, 561 F.3d 233, 240 (3d Cir. 2009); *see also Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008). While this presumption may not apply in express preemption cases involving areas not "historically regulated by states," it applies fully to "'areas of traditional state regulation' or police power." *Lupian*, 905 F.3d at 131 & n.5; *see also, e.g.*, *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 288 (3d Cir. 2020); *cf. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013) (declining to apply presumption where Congress legislated pursuant to U.S. Constitution's Election Clause).

Privacy is an area where the States have historically exercised police power. *See, e.g.*, *Nat'l Funeral Servs., Inc. v. Rockefeller*, 870 F.2d 136, 146 (4th Cir. 1989) ("[I]t is axiomatic that it is well within a state's police powers to act in protection of the privacy of the home."); *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) ("[T]he State's interest in protecting the well-being, tranquility, and privacy of the home is

8

certainly of the highest order in a free and civilized society"). By operating to enhance the privacy and security of public servants and their families in their homes, Daniel's Law lies at the heart of New Jersey's police powers. The We Inform Defendants and Innovis at minimum then bear a particularly heavy burden to show that Daniel's Law is preempted. But in any event, no defendant can show preemption meriting dismissal regardless of the presumption against preemption.[11]

## I.    THE NVRA DOES NOT PROVIDE A BASIS FOR DISMISSAL.

The NVRA was enacted pursuant to the Elections Clause of the U.S. Constitution, Art. I., § 4, cl. 1, which "empowers Congress to pre-empt state regulations governing the 'Times, Places and Manner' of holding congressional elections," but only "so far as [Elections Clause power] is exercised, and no farther." *Inter Tribal Council*, 570 U.S. at 8-9. Thus, a state law that simply "complements" the NVRA is preempted only if the two statutes cannot "operate harmoniously."

---

[11] Because the Attorney General understands this Court to be considering only the as-applied preemption challenges at this stage in light of the pending First Amendment questions at the Third Circuit, *see* DNJ ECF 39, 41, No. 24-cv-4176; CA3 ECF 94, No. 25-1555, this brief does not address Defendants' as-applied First Amendment arguments. Nevertheless, the Attorney General preserves all arguments and is prepared to address why those challenges would fail under this Court's prior analysis denying Defendants' facial First Amendment challenge and the New Jersey Supreme Court's analysis denying the as-applied First Amendment challenge in *Kratovil*, among other reasons. *See Atlas Data Privacy Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322 (D.N.J. 2024); *Kratovil v. City of New Brunswick*, _ A.3d _, 2025 WL 1689346, at *15-16 (N.J. June 17, 2025) (finding Daniel's Law serves compelling interests through least restrictive means available).

*Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012). Daniel's Law is not preempted by the NVRA as applied to the Restoration Defendants because (1) the NVRA does not require publication of voter-registration data by private entities like the Restoration Defendants, and (2) Daniel's Law does not otherwise conflict with the NVRA. The Restoration Defendants' arguments to the contrary are unavailing.

1. No conflict exists here because the NVRA regulates access to *state-maintained* voter records, while Daniel's Law regulates disclosure of information by private persons and entities. The NVRA serves "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4); *see also Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). "To achieve the latter goal, the NVRA requires States to 'conduct a general program that makes a reasonable effort to remove the names' of voters who are ineligible 'by reason of' death or change in residence." *Id.* (quoting 52 U.S.C. § 20507(a)(4)). And it explains what requirements "a State must meet in order to remove [a] registrant on change-of-residence grounds," *id.* at 761-62—such as first sending a postage prepaid "return card" with "a notice" explaining how to maintain their registration, 52 U.S.C. § 20507(d)(2). Because "no provision of federal law specifies the circumstances under which" such a notice may be sent, "States take a variety of approaches"—with some sending notices frequently and

widely (running the risk voters will overlook the need to return the card), and others using more targeted methods. *See Husted*, 584 U.S. at 762-63.[12]

The NVRA requires that "[e]ach State" must maintain for at least two years "records concerning the implementation of programs and activities conducted" to ensure the accuracy of voter rolls, except for records that "relate to a declination to register to vote." 52 U.S.C. § 20507(i)(1). It also specifies that, to whatever extent a State does send "notices" to probe whether a registrant has changed residence, these records must "include lists of the names and addresses of all persons to whom notices" are sent. *Id.* § 20507(i)(2); *see also id.* § 20507(d) (describing process and protections for such notices). Each State must make these records "available for public inspection and, where available, photocopying." *Id.* § 20507(i)(1).

By contrast, nothing in the NVRA requires private entities such as the Restoration Defendants to make any records available to anyone. Instead, by its express terms, the NVRA pertains only to notice "records 'maintain[ed]' by the State." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 399 (5th Cir. 2013); *see also Lawrence v. City of Philadelphia*, 527 F.3d 299, 316-17 (3d Cir. 2008) (a statute's unambiguous "plain meaning" is "conclusive"). Because the NVRA says nothing about later disclosure of these residence-change-related records by private parties, it

---

[12] New Jersey sends such notices only when a county commissioner of registration is informed by the registered voter or the U.S. Postal Service that the voter has moved to a different address. *See* N.J. Stat. Ann. § 19:31-15.

leaves regulation of such disclosure by private parties wholly open to the States. And the provision of Daniel's Law that the Restoration Defendants challenge indeed regulates only disclosure of a covered person's information by a private entity— something the NVRA does not address. *See* N.J. Stat. Ann. § 56:8-166.1(a)(1); *see also id.* § 56:8-166.1(d) ("person" excludes a government records custodian).

Federal courts thus routinely dismiss NVRA preemption claims involving laws governing disclosure of voter records by private parties. For example, the Fifth Circuit held that the NVRA did not preempt a Texas law that prohibited volunteer deputy registrars—temporary volunteers who receive and deliver completed voter registration applications to the county registrar—from photocopying or scanning the applications. *Steen*, 732 F.3d at 385, 399-400. The court explained that the NVRA only applied to records "'maintain[ed]' by the State," while the Texas law "only applie[d] to voter registration applications in the hands of [volunteer deputy registrars], *before* they are officially received or maintained by the State." *Id.* at 399. That distinction—that the records were not "'maintain[ed]' by the State"—was dispositive. *Id.* So too here. Once the Restoration Defendants received state voter-related records, that information was no longer maintained by a State and therefore the NVRA did not apply to it. So Daniel's Law cannot conflict with the NVRA.

2. Nor does Daniel's Law otherwise "stand[] as an obstacle to" the purposes of the NVRA. *Arizona v. United States*, 567 U.S. 387, 399 (2012). Central among

12

Congress's purposes in enacting the NVRA was "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office." 52 U.S.C. § 20501(b)(1); *see Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*, 136 F.4th 456, 463 (3d Cir. 2025) (explaining that "greater purpose" of the NVRA is expanding voter participation). Daniel's Law advances that purpose by empowering covered persons to prevent the disclosure of their information— including information contained in voter-related records—by private entities, without which protection they would presumably be more hesitant to register to vote. *See True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 733-36 (S.D. Miss. 2014) (allowing redaction of birthdates and other highly sensitive information from voter records disclosed under NVRA, reasoning that "[t]he term 'all records' does not require automatic disclosure of all *information* within the covered records," and that requiring disclosure of such information "would make citizens hesitant to register to vote"). Similarly, Daniel's Law also does not impede the NVRA's public-inspection provision. That provision relates only to (what in at least many States, including New Jersey, will be a narrow subset of) address-change-related notices "maintain[ed]" by the "State" itself, 52 U.S.C. § 20507(i)(1); *see Husted*, 584 U.S. at 762-63—not to the disclosure of such information by private entities. Nor is a State's obligation to make such address-change-related-notice records "available for public inspection" in some form, *see* 52 U.S.C. § 20507(i)(1), inconsistent with a

statute that prohibits the widespread dissemination of covered persons' information with no safeguards whatsoever. There is no conflict.

3.    The Restoration Defendants' cited cases—*Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) and *Voter Reference Foundation, LLC v. Torrez*, 727 F. Supp. 3d 1014, 1208 (D.N.M. 2024)—are not to the contrary, because both concerned the preemptive effect of the NVRA on state laws addressing access to state-maintained records. *Bellows*, for one, addressed whether the NVRA preempted a Maine law prohibiting access to state-maintained voter records by anyone other than municipal and state election officials. 92 F.4th at 49. The court concluded that the records maintained by Maine were indeed records covered by the NVRA and thus were subject to public inspection. *Id.* Similarly, *Torrez* concerned preemption of a New Mexico law that imposed restrictions related to access as well as sharing of state-maintained voter data. 727 F. Supp. 3d at 1081, 1221-22. But as noted, the provision Defendants challenge simply regulates disclosure of covered information by a private entity after receipt of a valid request, with no bearing on access to inspect state-maintained voter-related records. There is no basis for dismissal on NVRA preemption grounds.[13]

---

[13] The provision of Daniel's Law regulating the redaction of public agencies' records, N.J. Stat. Ann. § 47:1B-2, is not implicated because Defendants are not public agencies. And as noted, the NVRA requires only some opportunity to inspect

14

## II.    SECTION 230 DOES NOT PROVIDE A BASIS FOR DISMISSAL.

Section 230 was enacted in the wake of the rapidly advancing Internet to encourage technologies facilitating user control and to help limit exposure of minors to indecent material. *See* Pub. L. No. 104-104, Title V (1996); H.R. Conf. Rep. No. 104-458, at 81-91 (1996); S. Conf. Rep. No. 104-230, at 187-194 (1996); S. Rep. No. 104-23, at 9 (1995). Passed against the backdrop of a trial-court decision holding an online bulletin board liable for a libelous post made by a user, Section 230 was intended to encourage content moderation while shielding companies from essentially vicarious liability. *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 739 (9th Cir. 2024). The law thus provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), while making clear that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section," *id.* § 230(e)(3). Section 230 thus grants immunity insofar as a service provider is exercising "traditional editorial functions." *Def. Distributed v. Platkin*, 697 F. Supp. 3d 241,

---

"the names and addresses" of persons who were sent residence-change-related notices concerning potential removal of their names from voting rolls. 52 U.S.C. § 20507(d), (i). It certainly does not require broader access, or widespread, safeguard-free dissemination of even the information it does cover. *See, e.g.*, *Bellows*, 92 F.4th at 56 (observing that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File").

274 (D.N.J. 2023). In other words, it "protects websites from liability for material posted on the website by someone else," *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016), but does not bar claims based on the company's own communications, *see Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024).

Because the affirmative defense of Section 230 requires a "case-specific" and "claim-specific" analysis, "the burden is always on the party advancing [the] affirmative defense to establish its validity." *Calise*, 103 F.4th at 738. And since "affirmative defenses such as [Section 230] frequently turn on facts not before the court at the pleading stage, dismissal is appropriate only when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 592 (N.D. Ill. 2021)

This Court should reject Defendants' Section 230 defense because the complaints are devoid of any allegations establishing that Defendants (1) acted as an interactive computer service, (2) are not themselves information content providers wrongly being treated as publisher, or (3) obtained the information of covered persons that they allegedly disclosed in violation of Daniel's Law from an information content provider. Defendants' motions to dismiss should be denied.

1. Defendants have not shown that they are "interactive computer services" within the meaning of Section 230. Under Section 230, an "interactive computer service" is a system that "enables computer access by multiple users to a computer

server." *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) (quoting 47 U.S.C. § 230(f)(2)). "Courts typically have held that internet service providers, website exchange systems, online message boards, and search engines fall within this definition." *Id.* These types of companies fall within Section 230's intended coverage because they involve information content posted by individual users, furthering Section 230's objective of allowing "forum[s] for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity." 47 U.S.C. § 230(a)(3). Yet besides a conclusory statement that they maintain websites, Defendants have not offered any facts to establish that they are interactive computer services. *See* Infomatics MTD 19-20; Smarty MTD 8-9; We Inform MTD 19-20. As the proponent of this affirmative defense, Defendants were required to make this showing, which they have not.

2. Even if Defendants did operate interactive computer services, Section 230's immunity still would not apply because, in the context of Daniel's Law, they act as "information content providers." Under Section 230, an "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). This term is "broad," "covering even those who are responsible for the development of content only 'in part.'" *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1197 (10th Cir. 2009). An interactive computer

service becomes responsible for "developing" unlawful information and thus cannot claim Section 230 immunity when it has "gone beyond the exercise of traditional editorial functions," *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 128 (4th Cir. 2022), and beyond simply serving as a mouthpiece for "information provided by another information content provider," 47 U.S.C. § 230(c)(1); *see, e.g.*, *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 841 (C.D. Cal. 2021) (finding "[d]efendants' conduct ... has materially contributed to the creation" of unlawful content "on its platforms" and thus it was an information content provider); *Anthony v. Yahoo! Inc.*, 421 F. Supp. 2d 1257, 1262-63 (N.D. Cal. 2006) (Section 230 did not apply where plaintiff alleged defendant created tortious content). This is especially true where the interactive computer service is the *only* information content provider on its platform—and here, there is no allegation that Defendants allow other information content providers to post on their platforms at all, much less that they do no more than simply operate as a clearinghouse for those other content providers.

Moreover, courts have rejected Section 230 immunity defenses by defendants who collect and disclose personal information such as addresses and telephone numbers, finding that the defendants *developed* the information. *E.g.*, *Accusearch*, 570 F.3d at 1198 (finding where "confidential telephone information was exposed to public view ... that information was 'developed'"); *see also Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1174 (9th Cir.

2008) ("Where it is very clear that the website directly participates in developing the alleged illegality ... immunity will be lost."). For instance, in *Accusearch*, the Tenth Circuit found that the defendant was "responsible for ... the conversion of the legally protected records from confidential material to publicly exposed information." 570 F.3d at 1199. Similarly, courts have consistently found that services that collect and curate personal information are "responsible" for the "creation or development" of content and thus not protected by Section 230. *E.g.*, *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 898 (N.D. Cal. 2022) (explaining that defendant was "at least 'in part' responsible for the 'creation and development'" of content when it took that content "from other sources, curate[d] it, and upload[ed] it to its site in a novel configuration for repurposed uses"); *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 785 (N.D. Ill. 2021) (declining to dismiss based on Section 230 where defendant "curated that [personal] information for commercial gain and used plaintiff's and the class members' identities to do so"); *Wilson v. Ancestry.com LLC*, 653 F. Supp. 3d 441, 460 (S.D. Ohio 2023) (rejecting Section 230 defense where defendant contributed materially to the nonconsensual use of proposed members' names and personas).

And courts have found that sourcing, compiling, and dissemination of content obtained from government and private records extends beyond the limited immunity provided by Section 230. *See Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020). For example, in *Lukis*, the court held that Whitepages, a seller of

19

background reports, "did not act as a mere passive transmitter," but instead "actively compiled and collated, from several sources, information regarding [the plaintiff]," and thus, was not entitled to Section 230 immunity. *Id.* Similarly, in *Bonilla*, the court also held that Ancestry.com was not a "passive conduit" entitled to dismissal based on Section 230 immunity because it "collected and organized records and subsequently used Plaintiff's and the putative class members' names, likenesses, and identities in these records they curated for commercial gain." 574 F. Supp. 3d at 592.

Here, Defendants contend that they are entitled to Section 230 immunity because they do not "create" the information Daniel's Law protects. *See* Infomatics MTD 5-6, 20-21; Smarty MTD 10. But even if Defendants do not "create" the information, they certainly "develop" it, as Defendants materially contribute to the collection of material in their own databases. *See Roommates.com*, 521 F.3d at 1168. Like defendants in *Lukis* and *Bonilla*, if Defendants are actively "compil[ing] and collat[ing]" covered persons' information from several sources, including public records, then they are acting as more than a passive conduit and are not shielded by Section 230. *Lukis*, 454 F. Supp. 3d at 763; *accord Bonilla*, 574 F. Supp. 3d at 592.

That suffices to dispose of Defendants' motion to dismiss. After all, Plaintiffs allege that Defendants violated Daniel's Law based on their own conduct in collecting and creating user profiles and then failing to remove those profiles after receiving valid notice. *See e.g.*, Compl. ¶¶ 38-40, 58-63, No. 24-cv-4037. As just

explained, that kind of conduct does not receive Section 230 immunity. Because Defendants are alleged to have acted as content providers and not mere passive conduits or publishers, there is no basis for dismissal under Section 230.

3. Finally, by a similar token, Defendants have provided no basis to concluded that the information they posted on their websites was provided to them for disclosure on the Internet by another information content creator. Courts have found that information obtained from third parties that had no intent for it to be disclosed on the Internet is not information *provided* by another information content provider to support Section 230 immunity. *See Batzel v. Smith*, 333 F.3d 1018, 1033-34 (9th Cir. 2003), *superseded by stat. on other grounds as rec'd in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766 (9th Cir. 2017). Were it otherwise, "providers of interactive computer services could with impunity intentionally post material they knew was never meant to be put on the Internet .... [resulting in] nearly limitless immunity for speech never meant to be broadcast." *Id.* at 1033; *see also Elliott v. Donegan*, 469 F. Supp. 3d 40, 58 (E.D.N.Y. 2020) (finding Section 230 immunity inapplicable where a third party never intended a communication to be placed on an interactive computer service); *Accusearch Inc.*, 570 F.3d at 1199 (declining to apply Section 230 where "Accusearch solicited requests for such confidential information and then paid researchers to obtain it"); *Roommates.Com, LLC*, 521 F.3d at 1171 (noting "if the editor publishes material that he does not believe was tendered to him

21

for posting online, then he is the one making the affirmative decision to publish, and so he contributes materially to its allegedly unlawful dissemination").

That this is a fact-specific exercise only reinforces that dismissal is inappropriate. In *Batzel*, for instance, the Ninth Circuit vacated and remanded for the district court to evaluate whether the defendant should have reasonably concluded that an email sent to him was not intended for public posting. 333 F.3d at 1035. Similarly, in *Elliott*, the court declined to dismiss based on Section 230 because it could not tell from the complaint whether the information posted was provided by a third party that intended for it to be placed on the Internet for public viewing. 469 F. Supp 3d at 57-58. Here, while Defendants argue that they obtained covered persons' information from third-party sources, *see* Infomatics MTD 20-21; Smarty MTD 10; We Inform MTD 20-21, they have provided no basis to establish that such information was provided to them "for use on the Internet"—*i.e.*, with the intent that it be posted on the Internet, as required to qualify for Section 230 immunity. *See Batzel*, 333 F.3d at 1035; *Elliott*, 469 F. Supp 3d at 57-58. Rather, Defendants merely claim that they obtained the information from "publicly available sources," Infomatics MTD 20, "like the USPS, FedEx, and UPS," Smarty MTD 10. But merely obtaining information from another source without that source *providing* the information to the party to be posted on the Internet is insufficient. At a minimum, that forecloses any possibility of Rule 12(b)(6) dismissal on this basis.

22

Defendants' reliance on *Obado v. Magedson¸* 13-cv-2382, 2014 WL 3778261 (D.N.J. July 31, 2014), and *Dimeo v. Max*, 248 F. App'x 280, 282 (3d Cir. 2007), is therefore misplaced. Both cases concerned third-party defamatory comments that were either posted, or linked, to the defendants' websites by third parties, *Dimeo*, 248 F. App'x at 281-82; *Obado*, 2014 WL 3778261, at *1, whereas here, no third parties posted on Defendants' websites—rather, Defendants obtained the information from public sources on their own.[14] Because neither the complaints nor the arguments made by Defendants establish that the information allegedly disclosed in violation of Daniel's Law at least reasonably appeared intended for publication on the Internet, Defendants cannot obtain dismissal under Section 230.

## III.    THE FCRA DOES NOT PROVIDE A BASIS FOR DISMISSAL.

This Court should deny Innovis's motion to dismiss asserting as-applied FCRA preemption because the FCRA does not regulate disclosure of home addresses and phone numbers apart from consumer reports and Plaintiffs' complaint does not allege that Innovis violated Daniel's Law through transmitting consumer reports containing covered information, so the complaint reveals no basis for a

---

[14] Defendants also rely on *Dennis v. MyLife.Com, Inc.*, 20-cv-954, 2021 WL 6049830 (D.N.J. Dec. 20, 2021), *appeal docketed*, No. 21-1110 (3d Cir. 2022), to argue that publishing information gathered from third parties is protected by Section 230. *See* Infomatics MTD 21; Smarty MTD10; We Inform MTD 21. But *Dennis* is contrary to reams of caselaw holding that Section 230 is inapplicable where the defendant— not the third party—is responsible for the information's disclosure on the Internet.

finding of FCRA preemption on any consumer-report-related theory. In addition, there is no conflict between Daniel's Law's opt-in provision and the FCRA's opt-out provision relating to prescreening of consumer reports.

"Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy." *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001); *see* 15 U.S.C. § 1681(a)(4) (discussing "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy"). The FCRA "protect[s] consumers from the transmission of inaccurate information about them" and "establish[es] credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010). The FCRA therefore outlines the "items of information" that a CRA is prohibited from transmitting in a "consumer report." 15 U.S.C. § 1681c(a). A "consumer report," meanwhile, is "any written, oral, or other communication" by a CRA "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" that is used or collected "for the purpose of serving as a factor in establishing the consumer's eligibility for" purposes authorized under the FCRA. *Id.* § 1681a(d)(1). Home addresses and telephone numbers are not among the list of prohibited information.

24

The FCRA closely limits the provision of "consumer reports." It allows consumer reports to be made in response to a court order or subpoena; "[i]n accordance with the written instructions of the consumer"; or for limited purposes where the transaction has been initiated by the consumer. 15 U.S.C. § 1681b(a)-(b). A CRA may only furnish a consumer report in connection with a transaction that is *not* initiated by the consumer if "the transaction consists of a firm offer of credit or insurance," and the consumer has not opted out of the FCRA in accordance with the FCRA's opt-out provision. *Id.* § 1681b(c)(1)(B).

The FCRA includes an express-preemption provision, which (as relevant) preempts any "requirement or prohibition … imposed under" state law "with respect to any subject matter regulated under … subsection (c) or (e) of section 1681b of this title, relating to the prescreening of consumer reports," or "section 1681c of this title, relating to information contained in consumer reports." *Id.* § 1681t(b)(1)(A), (E). For all other state laws regarding "the collection, distribution, or use of any information on consumers," the FCRA preempts them only to the extent they "are inconsistent with" a provision of the FCRA, "and then only to the extent of the inconsistency." *Id.* § 1681t(a); *see Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015). That is, the FCRA preempts only applications of state laws that relate to information contained in consumer reports, that relate to prescreening of consumer reports, or that are otherwise inconsistent with the FCRA. *See Calabria*

25

*Ristorante, Inc. v. Ruggiero Seafood, Inc.*, 706 F. Supp. 3d 489, 505 (D.N.J. 2023) ("even where there is an *express* preemption clause, a court will diligently determine the substance and scope of Congress' displacement of state law").

Because the FCRA's scope of regulation is limited to information contained in "consumer reports" about creditworthiness and the like, it does not apply to personal information that does not bear on a person's credit (such as home addresses and phone numbers) when such information is not contained within a "consumer report," and thus does not preempt state laws regulating such information. Identifying information such as a consumer's "name, address, social security number, and phone number"—often called "credit header" information because it usually appears at the top of a report—is not itself a "consumer report," because it does not bear on a consumer's creditworthiness or related characteristics. *See, e.g.*, *Individual Reference Servs. Grp., Inc. v. FTC*, 145 F. Supp. 2d 6, 17 (D.D.C. 2001), *aff'd sub nom. Trans Union LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002); *Runyon v. ClearStar, Inc.*, 24-cv-1519, 2025 WL 1530582, at *4 (E.D.N.Y. May 29, 2025) (instructing that "personally identifying information, without more, does not fall within FCRA's definition of a consumer report because it does not bear on the seven factors outlined in Section 1681a(d)(1)"). This personal information is therefore not itself subject to the protections of the FCRA or the FCRA's preemptive scope. For that reason, the FCRA clearly cannot preempt state laws addressing such information

when not transmitted as part of a consumer report. *Cf. Consumer Data Indus. Ass'n v. Platkin*, 19-cv-19054, 2024 WL 1299256, at *17 (D.N.J. Mar. 27, 2024) (observing that FCRA did not preempt state law that did not regulate "what must be in a [free annual credit report], how the disclosure should be made, or when it should be made"), *appeal dismissed sub nom. Consumer Data Indus. Ass'n v. Att'y Gen. N.J.*, 24-1810, 2024 WL 4744219 (3d Cir. Oct. 18, 2024).

Here, as an initial matter, Plaintiffs' complaint does not contain any allegations suggesting that Innovis is acting as a CRA at all, as is required to bring Innovis within the FCRA's scope. *See* 15 U.S.C. § 1681a(f) (defining a CRA as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages … in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties"). Because preemption must be "apparent on the face of the complaint and documents relied on in the complaint,'" *Lupian*, 905 F.3d at 130-31, it is premature to determine what transmissions by Innovis the FCRA could even cover for purposes of addressing a FCRA preemption theory.

Even assuming that Innovis does act as a CRA, the FCRA would not warrant dismissal. After all, as just explained, to the extent Plaintiffs' claims against Innovis are based on its transmission of home addresses and telephone numbers outside of a "consumer report," they are plainly not preempted, because the FCRA does not

regulate home addresses and telephone numbers when they are transmitted not as part of a "consumer report."[15] *E.g.*, *Individual Reference Servs. Grp., Inc.*, 145 F. Supp. 2d at 17. And even assuming that Innovis does transmit consumer reports containing home addresses and telephone numbers, no such allegations appear in the complaint, making any preemption argument premature. *See Lupian*, 905 F.3d at 130-31. In other words, nothing about Plaintiffs' complaint suggests that they are seeking to hold Innovis liable, in whole or in part, for disclosure via a transmission of a covered person's information as part of a consumer report, nor are there any allegations regarding the circumstances underlying any such transmission.[16] Because no facts alleged in Plaintiffs' complaint reveal a basis for FCRA preemption, Defendant's motion to dismiss should be denied and these claims should proceed to discovery.[17] *Accord* Order at 5, *Atlas Data Privacy Corp., v. Trans Union*

---

[15] In fact, Innovis's website reveals that it offers products that are not consumer reports. *See* Innovis, https://tinyurl.com/mpmbefns (last visited July 14, 2025).

[16] Apart from the lack of any allegations providing facts that would implicate Innovis's FCRA preemption theory, any claim by Plaintiffs against Innovis based on a transmission in connection with a transaction that the covered person initiated may present a factual dispute over whether the covered person waived any Daniel's Law nondisclosure request as to that transaction by initiating the transaction. But that factual disclarity merely underscores that Rule 12(b)(6) dismissal is improper.

[17] To be clear, the FCRA regulates home addresses and telephone numbers when they appear *within* a consumer report and so the FCRA would preempt Daniel's Law only as applied to home address and telephone numbers appearing within a consumer report transmitted to another by a CRA.

*LLC*, No. BER-L-810-24, ID: LCV20251712792 (N.J. Super. Ct. Law Div. June 6, 2025) (holding that Atlas had sufficiently established "that TransUnion's conduct may not exclusively fall under the purview of the FCRA at this preliminary stage," and concluding that "[w]hether TransUnion was acting as a consumer reporting agency specifically with respect to Plaintiffs' information and the alleged violations of Daniel's Law presents issues to be addressed throughout discovery").

Finally, even assuming the FCRA applies to some of Innovis's disclosures, Daniel's Law's opt-in provision does not conflict with the FCRA's opt-out provision. The FCRA preempts any "requirement or prohibition … imposed under" state law "with respect to any subject matter regulated under … subsection (c) or (e) of section 1681b of this title, relating to the prescreening of consumer reports." 15 U.S.C. § 1681t(b)(1)(A). Section 1681b(e) of the FCRA outlines the process for consumers to "elect to have the consumer's name and address excluded from any list provided by a consumer reporting agency under subsection (c)(1)(B) in connection with a credit or insurance transaction that is not initiated by the consumer." *Id.* § 1681b(e). While Daniel's Law also allows covered persons to require entities to cease disclosing their personal information, N.J. Stat. Ann. § 56:8-166.1(a), it does not "relat[e] to the prescreening of consumer reports," 15 U.S.C. § 1681t(b)(1)(A). That is, Daniel's Law does not regulate subject matter related to the prescreening process, so it cannot be preempted by this FCRA provision.

29

Nor does Daniel's Law's opt-in mechanism otherwise conflict with the FCRA's opt-out mechanism. Daniel's Law provides that covered persons can opt-in by sending a valid written notice, in which case the recipient has ten business days from receipt to cease disclosing the information. N.J. Stat. Ann. § 56:8-166.1(a). The FCRA allows a consumer to elect to be excluded by submitting to the CRA "a signed notice of election form," which election becomes effective "beginning 5 business days after the date on which the consumer notifies the agency in accordance with" the FCRA, 15 U.S.C. § 1681b(e)(2)-(4)—a shorter compliance period than Daniel's Law allows. Because it is wholly possible for a CRA to comply with both the FCRA's and Daniel's Law's individual-choice provisions and Daniel's Law does not otherwise interfere with the FCRA, there is no FCRA preemption. Innovis's motion to dismiss under the FCRA should be denied.

## CONCLUSION

This Court should deny the motions to dismiss.

Respectfully submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:     /s/ Liza B. Fleming
          Liza B. Fleming (NJ Bar No. 441912023)
          Liza.Fleming@njoag.gov
Dated: July 14, 2025              *Deputy Attorney General*

30

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 14, 2025, I electronically filed the foregoing Brief in Opposition to Defendants' Motions to Dismiss Based on Preemption with the Clerk of the U.S. District Court for the District of New Jersey. Counsel for all parties will be served via CM/ECF.

/s/ Liza B. Fleming
Liza B. Fleming
Deputy Attorney General

Dated: July 14, 2025